UNITED STATES of America, Appellee,

v.

Thomas WIESLE, Appellant.

No. 76–1358.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 17, 1976.

Decided Sept. 21, 1976.

Randy Coleman, Little Rock, Ark., for appellant.

W. H. Dillahunty, U.S. Atty., Robert L. Neighbors, Asst. U.S. Atty., and Samuel A. Perroni, Asst. U.S. Atty., U.S. Dept. of Justice, Little Rock, Ark., for appellee.

Before GIBSON, Chief Judge, and STEPHENSON and HENLEY, Circuit Judges.

PER CURIAM.

Appellant Wiesle was convicted by a jury verdict of guilt [1] on one count of theft from

---

1. The Honorable Oren Harris, United States District Judge for the Eastern District of Arkansas, presiding. Appellant was sentenced to 21 months imprisonment, provided that after service of 90 days the execution of the balance would be suspended and Wiesle would be placed on two years probation. Wiesle was also fined $500.

an interstate shipment of freight in violation of 18 U.S.C. § 659. The sole issue raised on this appeal is whether appellant's motion for a mistrial, based on the fact that during the government's case-in-chief testimony was elicited that two accomplices had pled guilty to the same offense for which appellant was being tried, was correctly denied. We affirm.

The government's evidence showed that on December 11, 1974, Affiliated Food Stores of Little Rock, Arkansas, ordered 168 cases of Crisco Shortening from the Proctor and Gamble Food Division, Memphis, Tennessee. Subsequently, Mercury Motor Freight, Inc. of Memphis, Tennessee, was contacted to deliver the Crisco shipment destined for Affiliated. On December 23, 1974, a driver named Hicks, employed by Mercury Motor Freight, made the delivery to Affiliated. Two employees of Affiliated, Garrison and Boyd, left 100 cases of Crisco on the truck. After leaving Affiliated with the Crisco, Hicks drove to a cafe where he met Wiesle. Wiesle was also employed by Mercury Motor Freight as a truck driver. From there the Crisco was delivered to a dock where it was later picked up by a new purchaser. An envelope containing a $1200 check and addressed to Hicks was left at the dock. Wiesle received his share of the proceeds of the Crisco sale in cash from Hicks. Garrison and Boyd went to Wiesle's home where they were paid for their part in the theft. Testimony also revealed that Wiesle had contacted two government witnesses prior to trial in an effort to persuade them to change or alter their testimony.

Appellant offered testimony of two warehouse employees, both of whom testified that Wiesle had been at work with them during the time he was said to be with Hicks and delivering the Crisco to the dock. The defense also introduced the time cards of Hicks and Wiesle as tending to show the location of Wiesle on this particular day.

While presenting the direct testimony of Boyd, the government's counsel asked him if he had pled guilty in federal district court to theft from an interstate shipment with regard to the Crisco. Boyd responded in the affirmative. During Hicks' direct testimony, the government's counsel also asked if he had pled guilty to theft from an interstate shipment. Hicks replied that he had and that he was now in the Springfield Medical Center for prisoners. Neither of these questions by the government's counsel was objected to by the appellant. In fact, both witnesses were cross-examined with respect to their guilty pleas in an effort to uncover any agreement between them and the United States Attorney with respect to recommendations as to leniency in exchange for their cooperation. After the government rested its case, the appellant moved for a mistrial based on the accomplices' testimony that they had pled guilty to the same offense for which Wiesle was being tried. The motion was denied.

■■■ One person's guilty plea or conviction may not be used as substantive evidence of the guilt of another. See *Gerberding v. United States*, 471 F.2d 55, 60 (8th Cir. 1973); *United States v. Baete*, 414 F.2d 782, 783 (5th Cir. 1969). When a co-defendant appears as a witness at defendant's trial, however, he must testify honestly and completely when questioned as to his participation in the crime for which defendant is being tried. He may be examined as to all aspects of his involvement in that crime, including the disposition of any charges entered against him. Evidence that he entered a plea of guilty to the same offense is not error unless it is elicited as substantive proof of the defendant's guilt. Where it is introduced for other purposes, such as to impeach, to reflect on a witness' credibility, or to show the witness' acknowledgment of participation in the offense, evidence of a co-defendant's guilty plea is clearly admissible. In such circumstances, the trial judge should instruct the jury that the evidence is received for this purpose alone and that the plea cannot form the basis of any inference as to the guilt of the defendant. See, e. g., *Gerberding v. United States, supra*, 471 F.2d at 60.

■ The record does not show, nor does appellant contend, that the government, on direct examination, stressed the fact that the co-defendants here pled guilty or suggested to the jury, at any time, that it could infer defendant's guilt from their guilty pleas. To the contrary, it appears that emphasis, if any, arose from appellant's attempt to show a possible "deal" for leniency by the government. Although the trial judge failed to give an appropriate cautionary instruction, it is important to note that appellant neither requested the instruction nor objected to its absence. The admission of the guilty pleas into evidence was proper and, in light of the overwhelming evidence of guilt,[2] the failure to give a cautionary instruction was not such plain error as to require reversal. *See Gerberding v. United States, supra,* 471 F.2d at 60; *United States v. Rothman,* 463 F.2d 488, 490 (2d Cir.), *cert. denied,* 409 U.S. 956, 93 S.Ct. 291, 34 L.Ed.2d 231 (1972).

The judgment of conviction is affirmed.

2. The record contains overwhelming evidence of Wiesle's guilt. Boyd testified as to how the stolen Crisco came to be left on the truck. Hicks testified of his meeting with Wiesle on the day of the theft. The dock foreman testified as to how the Crisco was left at the dock by Wiesle. Both Boyd and Hicks testified to the division of the proceeds of the sale of the stolen Crisco with Wiesle. Finally, three witnesses testified of attempts by Wiesle to have two government witnesses change or alter their testimony.