Lewis C. WALLACE, Appellant,

v.

A.L. LOCKHART, Director of Arkansas Department of Corrections, Appellee.

No. 82–1773.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 17, 1982.

Decided March 7, 1983.

Rehearings Denied April 4 and April 25, 1983.

---

Mark L. Ross, Ross & Ross, P.A., Little Rock, Ark., for appellant.

Steve Clark, Atty. Gen., by Theodore Holder, Asst. Atty. Gen., Little Rock, Ark., for appellee.

Before BRIGHT, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Lewis C. Wallace appeals the denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1976). We affirm the judgment of the district court.[1]

## I. Factual Background

Wallace was convicted by a jury of kidnapping and capital felony murder and sentenced to fifteen years and life imprisonment without the possibility of parole. The evidence presented at Wallace's trial indicated that Wallace and his three co-defendants forced Calvin Smith into a car, drove him to the bank of the Arkansas River, and pushed him into the river causing him to drown.

Marlin Hallman and Henry Harris, Wallace's co-defendants who had previously been convicted of kidnapping and capital felony murder for their participation in the crime, testified at Wallace's trial. Their testimony reveals that Annette Wilson told Wallace, Harris, Hallman, and co-defendant Tywanna Martin that Calvin Smith burglarized Hallman's and Martin's apartment. Wilson also told the four where Smith lived and the car he drove. Wallace, Hallman, and Harris then got into Wallace's car and drove to Smith's apartment, where they observed Smith getting into his car and

1. The Honorable Henry Woods, United States District Judge, Eastern District of Arkansas.

driving off. They followed Smith to the parking lot of a local restaurant, accosted him when he got out of his car, forced him into Wallace's car, and drove him back to Hallman's and Martin's apartment. When they arrived at the apartment, Wilson apparently identified Smith as the man who had burglarized the apartment. Thereafter, Wallace and Harris took turns hitting Smith. Wilson testified that Harris was holding a gun to Smith's head during this time.

Later, Wallace, Harris, Hallman, and Martin drove Smith to the Arkansas River a few miles away. The purported purpose of this excursion was to locate the items that Smith had allegedly stolen from Hallman's and Martin's apartment. When they arrived at the bank of the river, Wallace, Harris, and Hallman ushered Smith out of the car and onto a platform overlooking the river. While on the platform, Wallace hit Smith several times and pushed him off the platform into the river fifteen feet below. Smith drowned in the river.

Wallace also testified at his trial. Wallace testified that he was present when Hallman and Harris forced Smith into the car. He also admitted that he drove the car to the river and was present when Smith was pushed into the river. Wallace, however, denied that he ever hit Smith or pushed him into the river. Wallace claimed that he was merely an innocent bystander and that Hallman and Harris were the ones who abducted Smith and ultimately pushed him into the river.

Wallace appealed his conviction to the Arkansas Supreme Court and, with the aid of newly appointed counsel, claimed: he was denied a speedy trial; the trial court improperly refused to give his requested jury instructions; and the trial court improperly excluded character evidence regarding the victim's brother. Wallace also filed a *pro se* supplemental brief claiming, *inter alia,* ineffective assistance of trial counsel and bias of the trial judge in admitting certain evidence. The Arkansas Supreme Court delivered a short opinion rejecting Wallace's claims as meritless and affirming his convictions. *Wallace v. State,* 270 Ark. 17, 603 S.W.2d 399, 400 (1980). Wallace later filed a *pro se* petition for post-conviction relief which was summarily denied by the Arkansas Supreme Court in an unpublished *per curiam* opinion.

Wallace then filed his federal habeas petition alleging: denial of a fair trial by the admission and exclusion of certain evidence; denial of effective assistance of trial counsel; insufficient evidence to sustain his convictions; improper refusal to give his requested jury instructions; and denial of his right to a speedy trial under Arkansas speedy trial rules. Wallace also requested appointed counsel and an evidentiary hearing. The district court, adopting a magistrate's report, found Wallace's allegations to be conclusory and insubstantial, and dismissed his petition without an evidentiary hearing. Wallace appeals the district court's dismissal of his petition.

## II. Discussion

### A. Admission of Evidence

■ Wallace initially claims he was denied a fair trial by the trial court's various rulings on the admission and exclusion of evidence. Initially, we note that questions concerning the admissibility of evidence are matters of state law and are not reviewable in a federal habeas corpus proceeding unless the asserted error infringed a specific constitutional protection or was so prejudicial as to deny due process. *Richards v. Solem,* 693 F.2d 760, 767 (8th Cir.1982); *Maggitt v. Wyrick,* 533 F.2d 383, 385 (8th Cir.), *cert. denied,* 429 U.S. 898, 97 S.Ct. 264, 50 L.Ed.2d 183 (1976).

■ Wallace claims the trial court erred in admitting, without proper authentication, the copies of two of the victim's dental charts. This claim is meritless. The two dentists who compiled the original dental charts testified that the admitted charts were copies of the original dental charts. The original dental charts were unavailable because they had been introduced into evidence in an earlier criminal case and were in the possession of the Clerk of the Arkan-

sas Supreme Court. We do not believe the trial court abused its discretion in admitting the copies of the dental records; proper authentication was established by the testimony of the dentists in whose offices the original dental charts were compiled. Ark. Stat.Ann. § 28–1001, Rules 901(a), (b)(1), 1001–1005 (Repl.1979). Furthermore, Wallace was not prejudiced by the admission of the copies of the victim's dental charts. The purpose of admitting the dental charts was merely to identify Smith as the victim of the drowning. No suggestion was ever made during trial that Calvin Smith might . not have been the victim of the drowning. Indeed, Wallace's own defense conceded that Smith was the victim of the drowning. Thus, the alleged improper authentication of the Smith's dental records could not have denied Wallace a fair trial.

■■■ Wallace also argues that the trial court denied him a fair trial in permitting the prosecution to ask leading questions of Wallace's co-defendants Hallman and Harris, both of whom had already been convicted of kidnapping and felony murder for their participation in the drowning death of Calvin Smith. Wallace suggests that the trial court erred in classifying Hallman and Harris as adverse or hostile to the prosecution. Initially, we note that a ruling permitting the prosecution to ask leading questions is a matter of state evidentiary law which is committed to the trial court's discretion. *Hamblin v. State,* 268 Ark. 497, 597 S.W.2d 589, 592 (1980); Ark.Stat.Ann. § 28–1001, Rule 611(c) (Repl.1979). *See also, Thomas v. Cardwell,* 626 F.2d 1375, 1386 (9th Cir.1980), *cert. denied,* 449 U.S. 1089, 101 S.Ct. 881, 66 L.Ed.2d 816 (1981). Accordingly, the validity of such a ruling is reviewable in a federal habeas corpus proceeding only insofar as it resulted in a trial so fundamentally unfair as to deny Wallace due process. *Batten v. Scurr,* 649 F.2d 564, 569 (8th Cir.1981). Without addressing

whether the trial court abused its discretion in classifying Hallman and Harris as hostile witnesses,[2] we conclude that Wallace was in no way prejudiced by the leading questions that the prosecution was permitted to ask Hallman and Harris. The only leading question Wallace can point to as being prejudicial was the prosecution's asking both Hallman and Harris: "Who hit Calvin Smith?" Presumably, this question was leading because it assumes Smith was ever hit. However, the trial judge sustained Wallace's objection to this question and required the prosecution to rephrase the question.[3] Furthermore, Wallace could not have been prejudiced by the question "who hit Calvin Smith?" because his own testimony established that Calvin Smith was hit. Finally, Wallace was given the opportunity to rebut the testimony of Harris and Hallman by cross-examination and by providing his own testimony that he never hit Smith.

■■■ Wallace next contends that Hallman and Harris should not have been permitted to divulge their jury convictions for their participation in the drowning death of Calvin Smith. Wallace suggests this prejudiced him by instilling in the jury's mind the inference that if Hallman and Harris were guilty, then Wallace must be guilty too. We recognize that one person's conviction may not be admitted as substantive evidence of the guilt of another. *See United States v. Wiesle,* 542 F.2d 61, 62 (8th Cir.1976); *Bisaccia v. Attorney General,* 623 F.2d 307, 312 (3d Cir.1980); *United States v. Baete,* 414 F.2d 782, 783 (5th Cir.1969). However, a co-defendant's prior conviction may be admitted for other purposes, such as to reflect his acknowledgment of participation in the offense for which the defendant is being charged. *Wiesle,* 542 F.2d at 62. Accordingly, as we stated in *Wiesle:*

> "When a co-defendant appears as a witness at defendant's trial ... he must testify honestly and completely when

**2.** Hallman's and Harris' initial unresponsiveness to the questions posed by the prosecution militate against a finding that trial judge abused his discretion in classifying Hallman and Harris as hostile to the prosecution.

**3.** The prosecution then asked Hallman and Harris if Smith was ever hit. After receiving affirmative responses from both Hallman and Harris, the prosecution then asked them who hit Calvin Smith.

questioned as to his participation in the crime for which defendant is being tried. He may be examined as to all aspects of his involvement in that crime, including the disposition of any criminal charges entered against him."

Generally, when a co-defendant's prior conviction is admitted to show his acknowledgment of participation in the crime, the trial judge should instruct the jury that the evidence is received for this purpose alone and cannot form the basis for any inference of the defendant's guilt. *Id., citing Gerberding v. United States,* 471 F.2d 55, 60 (8th Cir.1973), *see also Bisaccia,* 623 F.2d at 312.

 In this case, the record clearly shows that the prosecution neither emphasized Hallman's and Harris' convictions nor suggested to the jury that it could infer Wallace's guilt from these convictions. *See Wiesle,* 542 F.2d at 63; *cf. Bisaccia,* 623 F.2d 308–09, 312 (prosecution improperly accentuated co-conspirator's guilty plea as means of establishing defendant's complicity in conspiracy.) Although the trial judge failed to give an appropriate cautionary instruction, Wallace neither requested the instruction nor objected to its absence. *See Wiesle,* 542 F.2d at 63. Failure to so object, absent a showing of cause for not objecting and the resultant actual prejudice, precludes habeas corpus review. *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977). Wallace has failed to demonstrate the necessary cause to avoid preclusion of habeas corpus relief.[4] Furthermore, it is inconceivable that Wallace's defense could have been prejudiced by the jury's hearing about these prior convictions. Wallace himself testified that Hallman and Harris were the ones responsible for beating Smith and pushing him into the river. Thus, if anything, the admission of these prior convictions actually served to bolster the credibility of Wallace's own testimony. Also, the testimony did nothing more than give the jury a more complete and accurate picture of what actually occurred.

### B. Ineffective Assistance of Counsel

 In order to prevail on his claim of ineffective assistance of counsel, Wallace must demonstrate: (1) that his attorney failed to exercise the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances, and (2) that he suffered material prejudice as a result. *Morrow v. Parratt,* 574 F.2d 411, 412–13 (8th Cir.1978). There is a presumption that counsel is competent, *Comer v. Parratt,* 674 F.2d 734, 736 (8th Cir.1982) and the exercise of reasonable judgment, even when hindsight reveals a mistake in that judgment, does not render an attorney incompetent. *Reynolds v. Mabry,* 574 F.2d 978, 979 (8th Cir.1978).

Wallace's specific allegations of ineffective assistance of counsel are insubstantial and fail to demonstrate any real prejudice. Wallace first claims his counsel rendered ineffective assistance by suggesting in his opening statement that Wallace might be guilty of false imprisonment rather than kidnapping. In his opening statement, Wallace's counsel stated:

> Now in connection with the kidnapping charge, we've got what's called a false imprisonment statute. I think his honor will tell you it's your duty to consider whether or not under all the facts in this case if he's not guilty of kidnapping, he'd be guilty of false imprisonment. Now that's just holding a person against his will.

 We agree with the finding reached by the district court and the Arkansas Supreme Court that counsel's attempt to introduce the concept of false imprisonment as an alternative to the kidnapping charge was a reasonable tactical decision, calculated to encourage the jury to view Wallace's action in a more favorable light. Generally, a decision relating to a reasoned

---

**4.** Wallace attributes his failure to object to his counsel's ineffectiveness. It has been recognized that a bare allegation of ineffective counsel is not sufficient to satisfy the "cause" requirement of *Wainwright v. Sykes. See Wash-* *ington v. Estelle,* 648 F.2d 276, 278 (5th Cir. 1981) *citing Lumpkin v. Ricketts,* 551 F.2d 680, 683 (5th Cir.1977), *cert. denied,* 434 U.S. 957, 98 S.Ct. 485, 54 L.Ed.2d 316 (1977).

choice of trial strategy, even when proved improvident, cannot form the basis for an ineffective assistance of counsel claim. *See Comer,* 674 F.2d at 734, *citing Cox v. Wyrick,* 642 F.2d 222, 226–27 (8th Cir.), *cert. denied,* 451 U.S. 1021, 101 S.Ct. 3013, 69 L.Ed.2d 394 (1981); *see also Reynolds,* 574 F.2d at 979. Furthermore, Wallace's claim that he was prejudiced by his counsel's false imprisonment remark is belied by Wallace's own testimony that he was present when Smith was forced into the car and that he drove the car to the river where Smith was drowned.

 Wallace also contends his counsel's failure to investigate and challenge the medical examiner's qualifications constituted ineffective assistance of counsel. This claim is meritless. Wallace completely fails to show any prejudice resulting from his counsel's alleged inadequate investigation of the medical examiner's qualifications. Indeed, Wallace neither alleges nor demonstrates that the medical examiner's qualifications may have been suspect or that he erroneously determined that drowning was the cause of death. Nor is there any suggestion that counsel had or should have had any reason to believe that a more thorough cross-examination of the medical examiner would have been useful or necessary to Wallace's defense. *See Plant v. Wyrick,* 636 F.2d 188, 190 (8th Cir.1980).

Wallace finally contends that his counsel failed to conduct a prompt and thorough pretrial investigation of the circumstances surrounding his case. Wallace alleged that counsel's inadequate pretrial investigation was reflected by: (1) the failure to discover the prior statements Hallman and Harris had made to the police where such statements might have served to impeach Hallman's and Harris' credibility; and (2) the refusal to follow Wallace's suggestion to subpoena two "critical witnesses" who would testify to the existence of a plot against Wallace by his co-defendants, Hallman and Harris.

 First, in his habeas petition before the district court, Wallace did not raise the claim that counsel failed to discover the prior statements of Hallman and Harris. As a general rule, we are precluded from granting relief on a claim that was not raised in the habeas petition before the district court. *Houston v. Housewright,* 678 F.2d 757, 759 (8th Cir.1982); *Wedra v. Thomas,* 671 F.2d 713, 717–18 (2nd Cir. 1982).[5] Nevertheless, Wallace's claim is completely devoid of any factual support in the record. While the record shows that Hallman and Harris had made prior statements to the police, Wallace does not allege, let alone demonstrate, that counsel was unaware of the contents of these prior statements or that these prior statements would serve to impeach the trial testimony of Hallman and Harris.

 We also reject as conclusory and frivolous Wallace's claim that counsel failed to subpoena two unidentified "critical witnesses" who purportedly would have testified to an alleged plot against Wallace by his co-defendants. We recognize that *pro se* petitions should be liberally construed, *Hill v. Wyrick,* 570 F.2d 748, 751–52 (8th Cir.1978), and that a habeas petitioner, being in custody, is usually handicapped in developing the evidence needed to support the facts alleged in his petition. *Harris v. Nelson,* 394 U.S. 286, 291, 89 S.Ct. 1082, 1086, 22 L.Ed.2d 281 (1969). However, in this case, the frivolous nature of Wallace's claim is reflected by his own unwillingness to identify the critical witnesses whom he allegedly told his counsel to subpoena; moreover, Wallace does not indicate how these unnamed witnesses would have furthered his defense. *Cf., Blackledge v. Allison,* 431 U.S. 63, 75–76, 97 S.Ct. 1621, 1629–30, 52 L.Ed.2d 136 (1977); *Boyd v. Estelle,* 661 F.2d 388, 390 (5th Cir.1981); *United States v. Jones,* 614 F.2d 80, 82 (5th Cir.), *cert. denied,* 446 U.S. 945, 100 S.Ct. 2174, 64

---

5. Wallace also failed to raise this claim in state court either on direct appeal or in his Rule 37 post-conviction petition. We are precluded from granting relief on the basis of a claim that was not first presented in the state court. *Picard v. Connor,* 404 U.S. 270, 275–76, 92 S.Ct. 509, 512–13, 30 L.Ed.2d 438 (1971); *see also Powers v. White,* 680 F.2d 51, 52 (8th Cir.1982).

L.Ed.2d 801 (1980). Wallace was clearly in the best position to provide this information, yet, for whatever reason, has completely failed to do so, either in his direct appeal and post-conviction relief petition before the Arkansas Supreme Court, or in his federal habeas petition before the district court.

### C. Sufficiency of the Evidence

 Wallace contends that there was insufficient evidence to sustain his conviction for kidnapping and capital felony murder. A habeas petitioner is entitled to relief on a claim of insufficiency of evidence only if not any rational trier of fact could find the petitioner guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Moreover, a judgment by a state appellate court rejecting a challenge to evidentiary sufficiency is entitled to deference by federal courts. *Id.* at 323, 99 S.Ct. at 2791.

 Neither Wallace nor his appointed counsel raised a sufficiency of the evidence claim on direct appeal before the Arkansas Supreme Court. Wallace raised this claim for the first time in his post-conviction relief petition before the Arkansas Supreme Court. However, the Arkansas Supreme Court determined that Wallace's challenge to evidentiary sufficiency could and should have been raised in his direct appeal and was not reviewable in a collateral proceeding. As a general rule, a federal habeas petitioner who is barred by procedural default from bringing his claim in state court cannot litigate that claim in federal court absent a showing of cause for and prejudice from the default. *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977); *see also Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783, 801 (1982). This rule applies to a petitioner's constitutional claim that the evidence is not sufficient to support his conviction. *Jackson*, 443 U.S. at 321, 99 S.Ct. at 2790. In his federal habeas petition, Wallace clearly failed to allege any cause for failing to raise his sufficiency of the evidence claim on direct appeal before the Arkansas Supreme Court. Nevertheless the district court reviewed Wallace's sufficiency of the evidence claim and found that: "petitioner's own statement, along with the testimony of his accomplices and other evidence adduced at trial, was sufficient to permit a rational trier of fact to find him guilty beyond a reasonable doubt."

 Although principles of comity and federalism militate against deciding a claim which—because of petitioner's own unexcused procedural default—has not been reviewed by the state courts, we nonetheless agree with the district court's determination that there was sufficient evidence to permit a rational trier of fact to find Wallace guilty beyond a reasonable doubt of kidnapping and capital felony murder. Wallace himself testified that he was present when his co-defendants forced Smith into the car. He also testified that he drove the car to the river where Smith drowned. Although he denied ever hitting Smith or pushing him into the river, the jury could have reasonably discredited this testimony, particularly in view of the testimony of Hallman and Harris. However, even crediting Wallace's testimony that Harris and Hallman were the ones who hit Smith and pushed him into the river, Wallace could still be found guilty of capital felony murder if the evidence showed he was an accomplice to the kidnapping of Smith which culminated in the killing of Smith. *See* Ark.Stat.Ann. §§ 41–302, 41–1501 (Repl.1977); *see also Hallman v. State*, 264 Ark. 900, 575 S.W.2d 688, 692 (1979). Here, the jury could have reasonably found that Wallace was an accomplice to the kidnapping based upon his participation in driving Smith to Hallman's apartment and then later driving Smith to the river. Wallace's claim that he did not intend to kidnap Smith is unavailing. Wallace's own testimony [6] and the testimony of others [7] provided the jury with evidence from which it could have reasonably concluded that Wal-

---

**6.** Wallace admitted that he was present when Harris and Hallman told Smith to get into the car. Wallace stated that Smith sat in the backseat of the car between Harris and Hallman

lace knew Smith's presence in the car was involuntary and that Smith was being forced to locate the allegedly stolen property. *See* Ark.Stat.Ann. §§ 41–1701, 41–1702; *also see Hallman,* 575 S.W.2d at 692.

### D. Speedy Trial and Jury Instructions

Wallace contends that the nineteen and one-half month-delay between his arrest and his trial violated the Arkansas speedy trial rules. Arkansas Criminal Procedure Rules 28.1 and 30.1, Ark.Stat.Ann. Vol. 4(A) (Repl.1977). Generally, a claim that a state has violated its own speedy trial rules presents a question of state law for determination by state courts. *Powers v. White,* 680 F.2d 51, 52 (8th Cir.1982). A federal court's review of such a claim is limited to whether the state's violation of its own speedy trial rules was so fundamentally unfair and prejudicial to petitioner as to deny him due process. *Id.*

We do not believe Wallace's speedy trial claim raises a cognizable constitutional issue. First, we are in agreement with the district court that the Arkansas Supreme Court properly determined that Wallace was tried in compliance with the Arkansas speedy trial rules. *See Wallace v. State,* 270 Ark. 17, 603 S.W.2d 399, 400 (1980). Furthermore, even assuming Wallace was not tried within the prescribed time period, Wallace has failed to demonstrate any resultant unfairness [8] or material prejudice. Thus, Wallace has not raised a cognizable due process claim. Finally, we note that Wallace has not demonstrated that the pretrial delay violated his sixth amendment right to a speedy trial. Specifically, applying the factors enunciated in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972), Wallace has not established any improper reason for the delay, has not alleged that he asserted his right to a speedy trial, and has not shown that he was materially prejudiced because of the delay. *See Morris v. Wyrick,* 516 F.2d 1387, 1390 (8th Cir.), *cert. denied,* 423 U.S. 925, 96 S.Ct. 268, 46 L.Ed.2d 251 (1975).

Wallace also claims the trial court erred in failing to give his requested jury instructions concerning matters of reasonable doubt, presumption of innocence, premeditation and deliberation, kidnapping, false imprisonment, capital murder, and circumstantial evidence. The request for additional jury instructions is a matter addressed to the sound discretion of the trial judge. *Richards v. Solem,* 693 F.2d 760, 766 (8th Cir.1982). A federal court may grant habeas corpus relief only if the trial judge's erroneous refusal to accept additional jury instructions denied petitioner due process. *Id.* The Arkansas Supreme Court found that all of Wallace's requested instructions were adequately covered by other instructions given by the trial court. *Wallace v. State,* 603 S.W.2d at 400. In view of Wallace's failure to show why this finding was erroneous, we do not believe he has raised a cognizable due process claim.

### E. Evidentiary Hearing and Appointed Counsel

Wallace finally contends the district court erred in dismissing his petition without an evidentiary hearing and the appointment of counsel. He claims that appointed counsel could have provided factual support for his various constitutional allegations.

A federal court must grant an evidentiary hearing in a federal habeas corpus action if relevant facts are in dispute and a fair evidentiary hearing was not granted in state court. *Parton v. Wyrick,* 614 F.2d 154, 158 (8th Cir.1980), *citing Townsend v. Sain,* 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963). However, dismissal of the habeas petition without a hearing is proper where petitioner's

---

and that Harris hit Smith a number of times. Wallace also testified that he was present when Harris escorted Smith out to the platform overlooking the Arkansas river.

**7.** Annette Wilson testified that Harris pointed a gun to Smith's head while Wallace was present. Hallman and Harris testified that

Smith was forced into the car and then beaten while Wallace was present.

**8.** Wallace's own pretrial continuance motions and various other pretrial motions accounted for about eight and one-half months of the delay.

allegations are frivolous, *Blackledge v. Allison,* 431 U.S. at 75, 97 S.Ct. at 1629, where the allegations, even if true, fail to state a cognizable constitutional claim, where the relevant facts are not in dispute, or where the dispute can be resolved on the basis of the record. *Lindner v. Wyrick,* 644 F.2d 724, 729 (8th Cir.1981).

With this in mind, the only conceivable constitutional allegation that Wallace makes which might have warranted an evidentiary hearing was his claim regarding counsel's ineffective pretrial investigation. More specifically, Wallace alleged that counsel ignored his request to subpoena two potential witnesses who would have testified to an alleged plot against Wallace by co-defendants Hallman and Harris. The magistrate's report summarily rejected this claim as insubstantial because Wallace neither identified the potential witnesses nor indicated how their testimony would further his defense. Despite being given over a month to file objections to the magistrate's report and to provide additional evidence in support of his petition, Wallace never attempted to provide the names and possible testimony of the prospective witnesses.

■ Under the circumstances, we do not believe that the district court erred in dismissing Wallace's petition without an evidentiary on this claim. First, as discussed above, Wallace was certainly in the best position to provide—and certainly had the incentive to provide—the names and possible testimony of the witnesses whom he allegedly asked counsel to subpoena. His failure to provide such information belies the purported merit of his claim. Second, it is difficult to imagine exactly how a plenary presentation of evidence on this claim would have helped Wallace's cause. Presumably, these two unnamed witnesses might have testified that Hallman and Harris conspired to perjure themselves so as to implicate Wallace. However, as discussed above, even crediting Wallace's own version of what happened and discrediting Hallman's and Harris' version, there was still sufficient evidence from which the jury could have found him guilty of kidnapping and capital felony murder. Indeed, the dis-

positive trial issue in this case appears to have been whether, when Wallace drove Smith to Hallman's apartment and then to the river, Wallace knew that Smith was being held against his will and forced to locate the allegedly stolen property. Wallace himself admitted that Smith was sitting in the backseat of the car in between Harris and Hallman and was beaten by Harris. Annette Wilson testified that Harris held a gun to Smith's head while Wallace was present. From this testimony, the jury could have reasonably rejected Wallace's claim that he was completely unaware that Smith's presence in the car was involuntary.

■ Finally, in view of the foregoing, we conclude that the district court's refusal to appoint counsel for Wallace was not an abuse of discretion and violated no constitutional right of Wallace. *Williams v. Missouri,* 640 F.2d 140, 144 (8th Cir.), *cert. denied,* 451 U.S. 990, 101 S.Ct. 2328, 68 L.Ed.2d 849 (1981).

Judgment affirmed.