STATE of Iowa, Appellee,

v.

Thomas Neil HENDRICKSON,
Jr., Appellant.

No. 87–1526.

Supreme Court of Iowa.

July 19, 1989.

Thomas J. Miller, Atty. Gen., Julie A. Halligan, Asst. Atty. Gen., and Stephen E. Barbour, County Atty., for appellee.

Raymond E. Rogers, Acting State Public Defender and Linda Del Gallo, Asst. State Public Defender, for appellant.

Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, LAVORATO and SNELL, JJ.

McGIVERIN, Chief Justice.

Defendant, Thomas N. Hendrickson, Jr., was convicted by a jury of willful injury, in violation of Iowa Code section 708.4 (1987), and first degree robbery, in violation of Iowa Code sections 711.1 and 711.2. On appeal, defendant contends that: (1) the district court erred by refusing to specially instruct the jury concerning the credibility of a State's witness; (2) the court erred by refusing to replace an allegedly biased member of the jury; and (3) the jury should have been instructed that "jury nullification" was permissible. The case was transferred to the court of appeals which reversed on the witness credibility instruction issue alone. We granted the State's application for further review. We now vacate the decision of the court of appeals and affirm the judgment of the district court.

I. *Background facts and proceedings.* From the testimony and other evidence admitted at trial, the jury could have found the following facts.

On the night of June 5, 1987, Robin Olson rode with a friend from Eagle Grove to

Fort Dodge where they drank and played pool. At some point in the evening, the two men parted company and Olson was left without transportation back to Eagle Grove.

After the bars had closed, Olson met three men, Dean Summers, Gary Black and defendant, who agreed to give Olson a ride as far as a Fort Dodge truck stop. The three men then entered the cab of Summers' pickup truck, and Olson climbed into the rear.

On the way to the truck stop, defendant suggested to the other two men that they take a detour to a secluded location where they could beat Olson and rob him. Summers agreed and entered the empty parking lot area of a Fort Dodge golf course. There, defendant alighted from the truck and struck Olson in the face. A fight ensued and when he became able, Olson attempted to flee. He was quickly caught by Summers, however, who severely beat and kicked Olson, threatened him with a knife, and demanded his wallet.

Olson produced his wallet. Upon examination, defendant found it contained a $2500 cashier's check but no cash. Defendant threw the wallet and check in the direction of a nearby stream.

Olson was eventually able to escape and receive medical attention. Olson's injuries included cuts and bruises to the face, two broken ribs, a broken jaw, and permanent injury to his left eye.

At trial, the State offered into evidence Olson's testimony and the testimony of Gary Black. On both direct and cross-examination, Black testified that he had been charged with first degree kidnapping, first degree robbery and first degree theft for his involvement in the attack, but through an earlier plea agreement, he pleaded guilty to first degree theft only, with the other charges to be dismissed, and agreed to testify truthfully against defendant. Defendant made no objection to this evidence. Defendant also testified on his own behalf.

Marked inconsistencies existed in the testimony of Olson, Black and defendant in recounting the attack. Olson stated that defendant initiated the attack and thereafter all three men beat and kicked him. Black testified that defendant suggested the robbery and started the fight, but that he, Black, did not participate. Defendant said that Olson started the fight and that it was Summers who principally administered the beating.

During trial, a member of defendant's family transmitted a note to defendant's counsel concerning one member of the jury, Harvey Powell. The note stated, "The man in the jury top row, 2nd seat, is Dean's sister's (Shirley) boyfriend's father. Harvey Powell & he don't like Dean." The note and its source were brought to the attention of the court. The court allowed counsel the opportunity to question Powell. Defendant's counsel, however, did not voir dire Mr. Powell or request to replace him with an alternate at that time.

Although his name was mentioned in the testimony of others, Dean Summers did not testify or otherwise appear in defendant's trial.

After the close of the evidence, but before final instructions and argument before the jury, defendant's counsel requested that Powell be replaced by an alternate juror. At this time, the district court refused to replace Powell. Counsel then moved for a mistrial and this motion similarly was denied.

At that time, defense counsel also requested that a special instruction be submitted to the jury concerning the testimony of Gary Black. The district court refused to give the proffered instruction and submitted only a general instruction relative to the credibility of witnesses.

The jury found defendant guilty of willful injury and first degree robbery. Judgment and sentence were rendered on this verdict.

Defendant appealed, alleging the district court erred by refusing to submit his proffered jury instruction and by not replacing juror Powell. A divided panel of the court of appeals reversed on the instruction issue alone and ordered that defendant be given

a new trial. We granted the State's application for further review.

Additional facts are stated where pertinent.

II. *Defendant's proffered instruction.* Defendant claims he was prejudiced by the district court's failure to incorporate the substance of his proposed jury instruction, concerning the credibility of the witness Black who testified pursuant to a plea agreement, in its general instruction concerning the assessment of the credibility of witnesses.

The instruction given by the court to the jury was identical to Iowa Uniform Criminal Jury Instruction 105 and stated in part:

In passing on the credibility of the witnesses and weighing their testimony, you may and should consider their appearances and conduct on the witness stand, their age, intelligence, strength of memory, and means of knowledge of matters of which they speak, the remoteness of events about which they testify, their interest or lack of interest in the result of the trial, the motives, if any, actuating them as witnesses, their candor, fairness, bias or prejudice, the reasonableness and probability of their statements or want thereof, whether their testimony is corroborated or contradicted by other witnesses or facts proven, and from all of these and all other facts and circumstances proven upon the trial, determine where to give credit and where to withhold the same, and give to the testimony of each witness the weight to which you believe it is fairly entitled.

Defendant's requested instruction called attention to the testimony of Gary Black and the fact that Black testified as a witness for the State pursuant to a plea agreement involving an offense which arose out of the same events for which defendant was presently on trial. The requested instruction further directed the jury to consider Black's testimony with "greater caution and care than that of an ordinary witness."

Formerly, judicial comment on the evidence admitted at trial was perceived as "interference" and was prohibited by statute in Iowa. *See Frederick v. Gaston,* 1 Greene 401, 404 (Iowa 1848). Although no such prohibition currently exists, this court has continued to closely scrutinize communications from the bench because commentaries of this sort "tend to lead a jury to dissociate the evidence thus emphasized from all other evidence they are duty bound to consider." *State v. Milliken,* 204 N.W.2d 594, 596 (Iowa 1973).

Thus, we have stated that courts may not unduly emphasize, by repetition or otherwise, issues, theories, defenses, particular evidence, or other specific or assumed facts. *Dickman v. Truck Transp. Inc.,* 224 N.W.2d 459, 464 (Iowa 1974); *Amco Ins. Co. v. Stammer,* 411 N.W.2d 709, 715 (Iowa App.1987). The proper practice, rather, is to give a general instruction applicable to all witnesses alike. *Milliken,* 204 N.W.2d at 296–97; *see also State v. Bester,* 167 N.W.2d 705, 710 (Iowa 1969) (holding that the use of a jury instruction which singled out and commented upon the testimony of the defendant in a criminal trial constituted reversible error).

Bearing this approach in mind, the issue currently before us is whether the circumstances in the present action warrant an exception from this general rule.

Defendant contends that a co-defendant's guilty plea is amenable to misuse by the jury and that a court should clearly instruct the jury that such a plea can be used only to assess the co-defendant's credibility and cannot form the basis of any inference as to the guilt of the defendant. In support of his position, defendant cites, among other authorities, *United States v. Wiesle,* 542 F.2d 61 (8th Cir.1976).

*Wiesle* involved a prosecution for one count of theft from an interstate shipment of freight. During its case-in-chief, the government elicited testimony that two accomplices had pled guilty to the same offense for which the defendant was then being tried. The defendant's motion for a mistrial based upon this testimony was denied.

On appeal, the Eighth Circuit court of appeals noted that one person's guilty plea may not be used as substantive evidence of the defendant's guilt. *Id.* at 62. The court then stated:

Evidence that [a co-defendant] entered a plea of guilty to the same offense is not error unless it is elicited as substantive proof of the defendant's guilt. Where it is introduced for other purposes, such as to impeach, to reflect on a witness' credibility, or to show the witness' acknowledgment of participation in the offense, evidence of a co-defendant's guilty plea is clearly admissible. In such circumstances, the trial judge should instruct the jury that the evidence is received for this purpose alone and that the plea cannot form the basis of any inference as to the guilt of the defendant.

*Id.*

Defendant reads the precatory language of *Wiesle* as mandatory, and contends that his convictions should be reversed because the district court failed to give his requested instruction.

Faced with a similar issue, the Fifth Circuit court of appeals applied a more exacting analysis. In *United States v. Black,* 685 F.2d 132, 135 (5th Cir.1982), the court outlined a number of factors to be considered when evaluating the impact of evidence of a witness' guilty plea. These factors included the presence or absence of a limiting instruction, but the court also included other factors. These include whether there was a proper purpose in introducing the fact that a guilty plea was entered, whether the plea was improperly emphasized by the government, whether the plea was used as substantive evidence of the defendant's guilt, and whether the introduction of the plea was invited by defense counsel. *Id.*

■ In the present case, we note the following circumstances concerning the admission into evidence of witness Black's guilty plea: (1) Black was not on trial as a co-defendant with defendant; (2) in its direct examination, the prosecution did not unduly emphasize the plea agreement; (3) defendant did not make a contemporaneous objection to admission of testimony concerning Black's guilty plea or request that the court limit introduction of this evidence in any way;[1] (4) defendant further reiterated Black's guilty plea on cross-examination; (5) no record evidence exists to suggest the plea was used as substantive evidence of defendant's guilt or otherwise offered for an improper purpose; and (6) in their final arguments, both counsel for the State and defendant emphasized that evidence of the guilty plea bore on Black's credibility alone.[2]

Applying the factors outlined in *United States v. Black,* we are persuaded that defendant Hendrickson was not unfairly prejudiced by the admission of the guilty plea testimony. There simply is no record evidence that indicates the evidence was improperly used. Therefore, the district court acted within its discretion when declining to give defendant's proffered instruction in this regard.

III. *Defendant's challenge to juror Powell.* Following submission of the evidence, defendant's counsel was informed by Dean Summers' attorney that the substance of the note handed to defense counsel during trial was true and that some animosity may have existed between defendant's companion, Dean Summers, and a member of the jury in defendant's case, Harvey Powell. At that time defendant's counsel moved for a mistrial. The motion was denied and defendant now challenges this ruling on appeal.

**1.** In *Gherman v. Colburn,* 72 Cal.App.3d 544, 580, 140 Cal.Rptr. 330, 354 (1977), the court stated that a limiting instruction should be requested as evidence is offered rather than waiting until the close of trial.

**2.** Although the State has not so contended, evidence that is admitted without objection is prop-

erly in the case and may be considered for all purposes, even if it would have been excluded upon proper objection. It is entitled to its full and natural probative effect. *See State v. Brandt,* 253 N.W.2d 253, 258 (Iowa 1977) (hearsay); *State v. Harmon,* 238 N.W.2d 139, 146 (Iowa 1976).

The record shows that jury selection in the present case began with the court administering the oath to the entire panel of prospective jurors. During the selection process, counsel for the State read a list of names of potential witnesses and requested that the potential jurors, including Powell, signal if a name was familiar to them or if they knew the person in any way. Among the names read aloud by counsel was the name Dean Summers. Powell did not respond.

Powell did respond, however, to other questions, including inquiries concerning his past jury experience. After a brief voir dire concerning Powell's jury experience, counsel for the State and Powell concluded as follows:

Q: Mr. Powell, do you know of any reason why you cannot be fair and impartial? A: No. I got work like all the rest of them.

Q: Okay. But other than that, do you believe you can be fair and impartial? A: Yes.

Q: You don't know of any reason why you could not? A: No.

Known objections to prospective jurors, or objections which may be ascertained, are waived if no challenge is made before the jury is sworn. *State v. Cuevas*, 288 N.W.2d 525, 534 (Iowa 1980) (citing *State v. Grove*, 171 N.W.2d 519, 520 (Iowa 1969)). Defendant asserts, however, that he has not waived his objection to Powell. Rather, defendant contends that Powell's response (or lack of response) when asked during voir dire whether he knew Dean Summers was less than candid, and this response prevented defendant from discovering Powell's potential bias.

■ We believe defendant's allegations of concealment and underlying allegations of juror bias and misconduct are without merit. In denying defendant's motion for a mistrial, the district court noted Powell's responses, made while under oath, that he could be fair and impartial. The trial court also noted that the alleged relationship between defendant and Powell was highly attenuated.

The subject matter of the information withheld by the juror did not relate to matters constituting a challenge for cause. Iowa R.Crim.P. 17(5) (detailing grounds of challenges for cause). The information's only use to defendant would be to in some way undermine the juror's assurances that he knew of no reason why he could not be impartial.

It clearly would have reflected more favorably on the juror had he been more candid in responding to the general question, and the information might have been of value to defendant in evaluating his choices for strikes. It does not, however, follow that defendant was deprived of a fair trial. The general rule is that an illegal verdict does not result from false information given by a juror if the information is so insignificant as to indicate only a remote or speculative influence. 47 Am. Jur.2d *Jury* § 209, at 797 (1969).

There is no evidence that juror Powell could not hear and decide defendant Hendrickson's case impartially. Reviewing these circumstances, we agree with the district court that defendant's allegations of bias were speculative and did not warrant a mistrial. *Cf. State v. Cullen*, 357 N.W.2d 24, 27–28 (Iowa 1984). Although the trial court could have excused juror Powell and used an available alternate juror, the court did not abuse its discretion in denying defendant's motions.

■ IV. *Defendant's jury nullification contentions.* In addition to the arguments advanced on behalf of defendant by his counsel, the State Public Defender, defendant filed an additional brief pro se. In his brief, defendant challenges the following jury instruction used by the district court:

Your verdict must be based upon the evidence that has been received and the law on which the court has instructed you.

Defendant contends this instruction deprived the jury of an alleged inherent right to acquit a defendant even if its verdict is contrary to the law and evidence of the case.

We read defendant's argument as advocating the doctrine of jury nullification. We discussed this doctrine fully in *State v. Willis*, 218 N.W.2d 921, 924–25 (Iowa 1974). In *Willis*, we concluded:

Jury nullification exalts the goal of particularized justice above the ideal of the rule of law. We are persuaded the rule of law should not be subverted. A central theme in our constitutional system is that no man is above the law and all are equally accountable to it. The people are sovereign, but they exercise their sovereignty through government rather than juries.

*Id.* at 925.

We conclude defendant's contentions in the present action regarding jury nullification are without merit. Defendant's related contention, that his trial counsel allegedly rendered him ineffective assistance by failing to object to the above instruction, is similarly without merit.

V. *Disposition.* We conclude the district court committed no abuse of discretion when it refused to give defendant's requested jury instruction concerning the credibility of a witness for the State. Further, the court acted within its discretion when it denied defendant's motion for mistrial based upon alleged juror bias. Lastly, defendant's contentions based upon the doctrine of jury nullification are without merit. Therefore, we vacate the decision of the court of appeals and affirm the judgment of the district court.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.