UNITED STATES of America, Appellee,

v.

William Edgar ROGERS, Appellant.

UNITED STATES of America, Appellee,

v.

DeLinda Vianne ROGERS, Appellant.

Nos. 90–1237, 90–2222.

United States Court of Appeals,
Eighth Circuit.

Submitted April 8, 1991.

Decided July 23, 1991.

Rehearing and Rehearing en banc
Denied Aug. 29, 1991.

Calvin Holden, Springfield, Mo., argued, for appellant DeLinda Vianne Rogers.

Gregory K. Johnson, Springfield, Mo., argued, for appellee.

Before LAY, Chief Judge, FRIEDMAN,* Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

PER CURIAM.

These consolidated appeals arise from a scheme to manufacture and distribute

* The HONORABLE DANIEL M. FRIEDMAN, Senior Circuit Judge for the United States Court of Appeals for the Federal Circuit, sitting by designation.

methamphetamine. In case 90–1237, William Rogers pled guilty to a conspiracy to manufacture methamphetamine and phenyl–2–propanone ("P2P") and to distribute methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1) (1988). He also pled guilty to possession of a firearm in furtherance of a drug crime in violation of 18 U.S.C. § 924(c) (1988). He later sought to withdraw his plea but his motion was denied. Rogers' counsel on appeal argues Rogers had ineffective assistance of counsel and that the Guidelines sentence is incorrect. William Rogers has also filed a *pro se* brief raising numerous issues. In case 90–2222, Rogers' wife, DeLinda Rogers, appeals from a jury conviction on the same charges. She argues insufficient evidence, improper admission of evidence, and errors in sentencing. We affirm the judgment in both cases.

## I. *No. 90–1237, William Rogers*

William and DeLinda Rogers ran a medium-size methamphetamine lab at their home in rural Missouri. Two of their assistants became government informants and presented evidence against them after the police intercepted a package containing over 1,000 grams of methamphetamine carried by one of them. DEA agents and police arrested William and DeLinda and seized various lab equipment and precursor chemicals necessary to manufacture the drug.

On July 17, 1989, William requested that the district court appoint substitute counsel, citing a breakdown in communications between William and his appointed attorney. Just before trial was to begin, William's lawyer advised him to accept a plea bargain.

At the Change of Plea Hearing on July 31, 1989, the district court judge inquired about William's past indications that he was not satisfied with his counsel. Rogers stated that he was now getting along with his lawyer. The court's inquiry concluded with this exchange:

COURT: "So you're telling the Court that you are completely satisfied with the manner in which you have been represented?

ROGERS: Yes, sir, I am."

T.Cng.P. 5–7. At the same hearing, the government and the court told William that they estimated the base line offense level for the conspiracy charge to be a thirty-six, which would probably be reduced to a thirty-four for acceptance of responsibility, and would carry a range of 151 to 188 months. The court indicated that it could not be sure of the level until the Pre-sentence Investigation ("PSI") report was complete. Rogers stated on the record that he understood the calculation was preliminary. He also stated he understood the mandatory five year term for the firearm offense. He then entered a guilty plea.

The PSI found the base offense level for the conspiracy charge was thirty-four, and that William should receive a four point upward adjustment for being an organizer and a two point downward adjustment for acceptance of responsibility. The sentencing range was 235 to 293 months for the conspiracy charge. After receiving the PSI, Rogers sought to revoke his plea. A revocation hearing was held on November 19, 1989, and the court rejected Rogers' claims that he was induced to plead guilty and had received ineffective assistance of counsel. At the sentencing hearing, the district court sentenced William Rogers to consecutive terms of 235 months on the conspiracy charge and sixty months on the firearm charge.

William argues he was denied effective assistance of counsel when the district court failed to appoint different counsel. He also argues that his attorney was constitutionally ineffective because his lawyer failed to devote adequate time to his case and should not have counseled him to plead guilty. William states that he was dissatisfied with his attorney from the beginning.

The district court thoroughly inquired into William's earlier stated dissatisfaction with his attorney at the plea hearing. William's claim is refuted by his declaration in open court that he was completely satisfied with his attorney. William admits that he knew the calculation of his sentence given

at his plea hearing was preliminary. We hold that the district court did not err in refusing to appoint different counsel and that William cannot meet the high standard of proving ineffectiveness of counsel established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). After examining the record, we find the remainder of William's arguments to be without merit. A full discussion of these issues would have little precedential value.

## II. *No. 90–2222, DeLinda Rogers*

### A. Admission of Prejudicial Guilty Plea

DeLinda Rogers initially entered a plea of *nolo contendere* on the charges but was allowed to withdraw her plea and proceed to trial. At trial, the government presented testimony from two co-conspirators, Chris Noble and Wade Stufflebean, who had agreed to cooperate with the government in exchange for their testimony. DeLinda's trial strategy was to discredit the government witnesses who had observed and participated in the manufacturing of the drugs at the Rogers' residence. DeLinda called Mark Webster as a witness, who was a friend of William Rogers and had been incarcerated at the same detention facility as William, Noble and Stufflebean. Webster testified that Noble had told him that the government was pressuring Noble to lie about the involvement of "the Rogers family" in the drug operation. Webster stated he meant DeLinda and William Rogers when he referred to the Rogers family. Over defense counsel's objection, the trial judge ruled that the government could impeach Webster by asking him if he knew that William had pleaded guilty to a conspiracy to manufacture and distribute methamphetamine. When asked if he knew William had pleaded guilty, Webster responded that he did. The jury convicted DeLinda Rogers and she was sentenced to an aggregate term of 248 months.

■ DeLinda first argues that the trial court erred in admitting the highly prejudicial fact that William Rogers had pleaded guilty to the same charges for which she was now standing trial. The trial court

found that the defense had invited this impeachment by eliciting testimony from Webster that co-conspirator Noble had told Webster that both William and DeLinda Rogers were innocent and that the government was forcing Noble to testify otherwise. The court reasoned that the fact Noble knew William had pleaded guilty tended to show that Noble would not have made statements saying William was innocent. The government asked Webster if he knew William had pleaded guilty to the same offense with which co-conspirator Noble had been charged. After Webster stated he knew that, the government promptly terminated its cross examination.

■ The trial court has broad discretion in determining what evidence to admit and its decision will be overturned on appeal only if there has been an abuse of discretion. *Rothgeb v. United States*, 789 F.2d 647, 650 (8th Cir.1986). Any time a guilty plea of a co-offender is either directly or indirectly brought into a trial, trial courts must ensure it is *not* being offered as substantive proof of the defendant's guilt. *See United States v. Wiesle*, 542 F.2d 61, 62 (8th Cir.1976) (finding a co-defendant or co-conspirator's guilty plea may not be used as evidence of the defendant's guilt). Reference to such pleas obviously is capable of seriously prejudicing the defendant's right to a fair trial. *United States v. Handly*, 591 F.2d 1125, 1128 n. 1 (5th Cir.1979). A reviewing court must carefully scrutinize the facts and circumstances of the manner in which the plea was used. It is essential to consider such factors as whether the court gave the jury a limiting instruction, "whether there was a proper purpose in introducing the fact of the guilty plea, whether the plea was improperly emphasized or used as substantive evidence of guilt, [and] whether the introduction of the plea was invited by the defense counsel." *United States v. Fleetwood*, 528 F.2d 528, 532 (5th Cir.1976); *see also United States v. Kroh*, 915 F.2d 326, 337 (8th Cir.1990) (en banc) (Lay, C.J., dissenting).

In limited circumstances, the government is entitled to use a co-offender's guilty plea during cross examination for impeachment purposes when the defense has opened the door for such impeachment. Webster was a close friend and fellow inmate of William Rogers. The government had the right in these circumstances to impeach Webster's testimony. There is no indication in the record that the government had an improper motive in questioning Webster about the guilty plea. Although a limiting instruction on use of the guilty plea should normally be given, we find that here the defense counsel made a tactical decision not to request one and the prosecution did not highlight the guilty plea before the jury. The failure to give a cautionary instruction was not plain error. *See Wiesle*, 542 F.2d at 63.

## B. Sufficiency of the Evidence

DeLinda Rogers next argues that the evidence was insufficient to support her conviction. The government primarily relied upon the testimony of Stufflebean and Noble, both of whom pleaded guilty to conspiring to manufacture methamphetamine at the Rogers' residence. The government also presented testimony from Noble's wife who was present on several occasions when the drug manufacturing process was taking place at the Rogers' house. In addition, there was testimony from law enforcement officers who investigated the drug operation, a handwriting expert who testified that handwriting found on a parcel containing drugs and intercepted by law enforcement personnel was probably that of DeLinda Rogers, and experts explaining the drug manufacturing process. DeLinda also testified and denied that she had participated in the manufacturing and distribution of methamphetamine and insisted the drug operation was carried on by Stufflebean and Noble at the Noble residence. The defense also had a

handwriting expert who testified that the handwriting on the package was not that of DeLinda. In addition, the defense presented circumstantial evidence that tended to show that the elaborate cooking process needed to make methamphetamine could not have occurred at the Rogers' residence without detection by local residents.

From the record, it is readily apparent that the government introduced adequate evidence to meet its burden of proof. Drug manufacturing equipment and chemicals were found at the Rogers' residence. Three witnesses testified that DeLinda participated, at least to a limited extent, in the drug operation. The government's handwriting expert testified that the writing on the parcel was probably that of DeLinda, which showed her involvement in the distribution of the drugs. The jury was entitled to resolve the conflicting evidence and make credibility determinations. We hold that there was sufficient evidence to support DeLinda's conviction.

## C. Sentencing Issues

DeLinda argues the district court erred in not granting her a downward departure under the Federal Sentencing Guidelines for being a minimal participant or a minor participant in the illegal activity. Under section 3B1.2(a) of the Guidelines, a defendant who is a minimal participant is entitled to a four-level reduction. Under section 3B1.2(b), a defendant who is a minor participant is entitled to a two-level reduction.[1] Whether a defendant is a minimal or minor participant is a question of fact and the district court's decision will be disturbed only if clearly erroneous. *United States v. Ellis*, 890 F.2d 1040, 1041 (8th Cir.1989). The district court found that DeLinda was involved in all aspects of the drug manufacturing and distribution process and that her primary responsibility was packaging and addressing the drugs for shipment. Although Chris Noble char-

---

1. A minimal participant must be "plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2(a), comment. (n. 1). The Commission intended downward departures for minimal participation to be given "infrequently." *Id.* (n. 2). For a defen-

dant to qualify as a minor participant, he or she must be one "who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2(b), comment. (n. 3).

acterized DeLinda as having no specific responsibilities and testified she was not a main player, taking the evidence as a whole, we cannot say that the district court's decision to refuse a downward departure was clearly erroneous.

Finally, DeLinda contends that the district court erred in relying on the precursor chemicals found with the drug laboratory equipment in determining the base offense level. If the amount of drugs seized does not reflect the scale of the manufacturing offense, sentencing courts shall consider evidence concerning the amount of methamphetamine defendants were capable of producing from the precursor chemicals. *United States v. Evans*, 891 F.2d 686, 687 (8th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 2170, 109 L.Ed.2d 499 (1990). The district court heard expert testimony estimating the amount of methamphetamine that could be produced from the precursor chemicals, as well as evidence from Noble about the amount of drugs made in previous cooks. The district court arrived at a correct calculation of the base offense level after hearing this evidence.

## CONCLUSION

The judgment of the district court in both cases is affirmed.