Alexander D. RICHARDS, Vernon Moves Camp, Appellants,

v.

Herman SOLEM, Warden, South Dakota State Penitentiary and Mark V. Meierhenry, Attorney General, State of South Dakota, Appellees.

No. 82–1304.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 17, 1982.

Decided Nov. 17, 1982.

Mark V. Meierhenry, Atty. Gen., Douglas E. Kludt, Asst. Atty. Gen., Pierre, S.D., for appellees.

Sarah Richardson, Davenport, Evans, Hurwitz & Smith, Sioux Falls, S.D., for appellants.

Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BRIGHT, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Alexander D. Richards and Vernon Moves Camp appeal the denial of their petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1976). We affirm the judgment of the district court.[1]

## I. *Facts*

Petitioners and a third person were convicted of robbery and aggravated assault in connection with the beating of Gary Vroman. Vroman, a service station operator, was called at home by an employee and told that two women reported that their car was in a ditch and needed a tow. Vroman drove his wrecker to the scene, which was northwest of Kadoka, South Dakota, and some 300–400 yards west of the station. After Vroman pulled the car out with the assistance of the male occupants of the car, the occupants said they did not have enough money to pay for the $20.00 tow. Vroman suggested they return to his station to work something out and he returned to his wrecker. Two of the men ran at Vroman and dragged him out of his truck. Vroman was thrown in the ditch and when he attempted to flee, he was stomped in the face and hit on the head with a "J" hook, a metal hook about one-inch in diameter. Vroman was robbed of his wristwatch, boots, billfold, and other items. After this severe beating, Vroman staggered to his service station and told his employee that a "couple of Indians beat me up." The employee reported the incident to the police and Vroman was hospitalized. In one doctor's opinion, Vroman was near death when he arrived at the hospital; one eye was completely shut, his nose was broken, and

---

1. The Honorable Donald J. Porter, United States District Judge, District of South Dakota.

multiple lacerations, some deep, were inflicted on his scalp and neck.

Vroman told police the car was a 1966 blue Ford. A statewide alert was put out for the vehicle, and a few hours later the police stopped a 1967 blue Ford. There were six people in the car: petitioners, the third defendant, petitioner Camp's brother (Louis Moves Camp), and two women. One of the women, Juanita Bill, made incriminating statements against petitioners and the third defendant. At trial she said the three defendants were at the car when Vroman pulled it out of the ditch and that she heard the defendants arguing with Vroman, but she stayed down inside the car. She said she heard a scream. She also said the fourth man in the car at the time of the arrest (petitioner Camp's brother) was not in the car at the time of the incident. Her statements provided the basis for a search warrant for the car. The search produced several items stolen from Vroman.

Petitioners were tried in February 1978 in South Dakota state court along with the third defendant. At trial, none of the three defendants called any witnesses on their behalf. All three defendants were convicted and were sentenced to ten years for the assault and twenty-five years for the robbery with the sentences to be served concurrently.

The defendants appealed to the South Dakota Supreme Court, which affirmed their convictions. They sought post-conviction relief in both state and federal courts, with the federal district court staying its proceedings pending the outcome of the state post-conviction proceedings. A state court judge denied relief, which is an unappealable decision absent a certificate of probable cause. S.D. Codified Laws Ann. § 23A–34–20 (1979). No such certificate was forthcoming, and proceedings in the district court resumed. The third defendant's petition ·was dismissed on his own motion. The district court determined that of the forty-four grounds for relief asserted by petitioners, thirteen of them had not been exhausted in state court. The nonexhausted issues were raised in the Assignments of Error in the state Supreme Court, but were not briefed. That court apparently limits considerations to matters briefed and argued and views assignments of error not briefed to be abandoned. *State v. Hall,* 272 N.W.2d 308, 313 (S.D.1978). The court addressed the remaining thirty-one issues and found them lacking in merit.

## II. *Total Exhaustion Rule*

▮ Before reaching the merits of the issues petitioners raise in their appeal, we must determine whether the "total exhaustion" rule of *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) requires us to remand the matter to the district court with directions to dismiss. In *Lundy* a majority of the Supreme Court held that a district court must dismiss a "mixed" petition, that is, one with both exhausted and unexhausted claims. *Id.* 455 U.S. at 522, 102 S.Ct. at 1205, 71 L.Ed.2d at 390.[2] The district court opinion preceded *Lundy.* The question before us is whether *Lundy* is retroactive.

We have addressed that issue in *Dunn v. Wyrick,* 679 F.2d 731 (8th Cir.1982) and concluded that applying *Lundy* retroactively would constitute a great waste of judicial

---

**2.** This "total exhaustion" rule was embraced by six justices: Justice O'Connor, the author of the opinion, Chief Justice Burger and Justices Powell and Rehnquist, all of whom joined Justice O'Connor's opinion, Justice Brennan, who wrote a concurring opinion but joined Justice O'Connor's opinion on the total exhaustion issue, 455 U.S. at 532–33, 102 S.Ct. at 1210–11, 71 L.Ed.2d at 396–97, and Justice Marshall, who joined Justice Brennan's opinion. There was not a majority opinion on the ·question of whether a petitioner who refiles his petition in district court without the unexhausted claims can raise the deleted claims in subsequent peti-

tions. Justice O'Connor and the three justices who joined her opinion thought a petitioner in such a situation would risk the dismissal of subsequent federal petitions. *Id.* 455 U.S. at 521, 102 S.Ct. at 1205, 71 L.Ed.2d at 390. Justices Brennan, White, Blackmun and Marshall disagreed. *Id.* 455 U.S. at 529, 102 S.Ct. at 1209, 71 L.Ed.2d at 395 (Blackmun, J., concurring), *id.* 455 U.S. at 537, 102 S.Ct. at 1213, 71 L.Ed.2d at 400 (Brennan, J., concurring and dissenting), *id.* (White, J., concurring and dissenting). Justice Stevens expressed no opinion on this issue. *Id.,* n. * (Brennan, J., concurring and dissenting).

resources. However, six weeks after the *Dunn* opinion was filed, a published order of this circuit came to an arguably contrary result. In *Stewart v. Parratt,* 682 F.2d 757 (8th Cir.1982), this court ordered a case remanded to the district court for consideration in light of *Lundy.* The court said the petitioner could either proceed in state court with the unexhausted claims or amend his petition to delete the unexhausted claims, in which case the appeal would proceed. *Id.* at 758.

We will follow *Dunn* for three reasons. First, *Dunn* is clearly directly on point with the instant case. As in *Dunn,* this case involves an appeal from a district court judgment which denied the writ and preceded *Lundy.* The order in *Stewart* does not make clear whether the district court opinion preceded *Lundy.* Second, *Dunn* is persuasive in arguing that retroactive application of *Lundy* would constitute a great waste of judicial resources. As *Dunn* points out, the end result of retroactive application of *Lundy* could be that another district court and this court would have to reconsider the same claims at another time. 679 F.2d at 733. Third, nonretroactive application of *Lundy* in a case like this is consistent with the principles underlying that decision. The opinion of the Court in *Lundy* is concerned with comity between state and federal courts and the importance of giving state courts the initial opportunity to pass upon and correct violations of federal rights. 455 U.S. at 518–20, 102 S.Ct. at 1203–04, 71 L.Ed.2d at 387–88. The Court felt a total exhaustion rule was necessary to meet this concern because exhausted and unexhausted claims may be intertwined and as a result a district court may be tempted to decide unexhausted claims. *Id.* 455 U.S. at 520, 102 S.Ct. at 1204, 71 L.Ed.2d at 388. Furthermore, the Court believed a total exhaustion rule would help develop a complete factual record for the district court. However, in the instant case, as in *Dunn,* there is no threat to the comity between state and federal courts. We do not have a single federal judge upsetting the judgment of the highest state court. Rather, we have a district court which refused to interfere with a conviction in a state court.

Post-*Lundy* orders of the Supreme Court do not require a different result. Two such orders clearly dealt with cases where the petition for the writ of habeas corpus was granted. *Bergman v. Burton,* —— U.S. ——, 102 S.Ct. 2026, 72 L.Ed.2d 478 (1982); *Duckworth v. Cowell,* 455 U.S. 996, ——, 102 S.Ct. 1626, 71 L.Ed.2d 858 (1982). Furthermore, the more recent case, *Bergman,* was merely remanded for further consideration in light of *Lundy.* (*Duckworth* was remanded with instructions to dismiss the petition for the writ of habeas corpus.) In a third case, also with an order by the Court to dismiss the petition citing *Rose v. Lundy,* the Supreme Court's order does not make clear whether the writ had been granted in part. *Rodriquez v. Harris,* 455 U.S. 997, 102 S.Ct. 1627, 71 L.Ed.2d 858 (1982). (The case was on the in forma pauperis docket, so the petition for certiorari would presumably have been filed by the habeas petitioner.)

Retroactive application of *Lundy* in this case would do nothing to further the comity concerns of the Supreme Court but would increase the federal judicial workload. Post-*Lundy* Supreme Court orders do not require a contrary result. Therefore, we will not apply *Lundy* retroactively.[3]

### III. *Lack of Disclosure of Evidence*

We now proceed to the merits of petitioners' claims. Their most substantial claim is that the prosecution temporarily or permanently withheld exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). A review of the record shows that petitioners suffered no prejudice as the result of any late disclosures or withheld evidence.

---

**3.** A panel of the Sixth Circuit has held that *Lundy* would not be applied retroactively unless the total exhaustion issue had been raised in the district court. *Bowen v. Tennessee,* No. 81–5386 (6th Cir. July 30, 1982). The Sixth Circuit has voted to rehear the case en banc, vacating the panel opinion. *Bowen v. Tennessee,* No. 81–5386 (6th Cir. Aug. 11, 1982). We have not adopted the waiver argument made by the panel in *Bowen.*

First we must emphasize there is a constitutional duty for the prosecution to disclose evidence only "if the omission is of sufficient significance to result in a denial of the defendant's right to a fair trial." *United States v. Agurs,* 427 U.S. 97, 108, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976). There is no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case. *Moore v. Illinois,* 408 U.S. 786, 795, 92 S.Ct. 2562, 2568, 33 L.Ed.2d 706 (1972). The question is not whether the information "might" have affected the jury's verdict; rather, the question is whether the omitted evidence, in the context of the entire record, creates a reasonable doubt as to a petitioner's guilt that did not otherwise exist. *Agurs,* 427 U.S. at 108–09, 112, 96 S.Ct. at 2399–2400, 2401. When petitioners' allegations are put to this standard, it is clear that there was no constitutional error. The key evidence against petitioners is that Vroman was severely beaten and robbed, he said he was attacked by a couple of Indians, the stolen goods were found in petitioners' car, and Juanita Bill testified that she heard petitioners arguing with Vroman and that the fourth man in the car was not with them when the car was in the ditch. Petitioners presented no witnesses to contradict the evidence as to their presence at the scene of the crime and there was no explanation of how petitioners obtained the stolen goods. We must decide whether, in this context, any late disclosures or nondisclosures by the prosecution would have created a reasonable doubt as to petitioners' guilt.

Some items of evidence were not disclosed until trial. These were a fingerprint report which showed there was one latent print on Vroman's wrecker which did not belong to any of the defendants, a police report which referred to other investigative reports, photographs which showed that petitioners' car was a 1967 model Ford rather than a 1966 as Vroman had said, photographs which petitioners say could have impeached testimony establishing a chain of custody, reports or notes of interviews with Juanita Bill, arrest reports of petitioners, a photograph of petitioner Camp's brother, a medical report on Vroman's condition, and hair, blood, and soil samples. Petitioners allege that the late disclosures impeded an effective defense preparation. However, they failed to explain specifically how the defense would have used the evidence differently if the evidence had been disclosed at an earlier date. General allegations that an effective defense was impeded by late disclosures only show that a verdict "might" have been affected, which is insufficient to establish a constitutional violation. *See Agurs,* 427 U.S. at 108–09, 96 S.Ct. at 2399–2400.

Other items of evidence were never disclosed because they did not exist at the time of trial. These included a tape of police radio broadcasts from the night of the incident which petitioners say may have shown the arrest was illegal (the tape was reused the same night), the original draft of Juanita Bill's affidavit providing the basis for the search warrant which petitioners say could have shown that the warrant was illegal (the document was lost), and a tape of an interview with Vroman which petitioners say would have shown his description of one of the attackers fit petitioner Camp's brother (it was erased by the prosecution because Vroman was a cooperative witness and notes were available).

As to the police radio tape, petitioners have done nothing more than speculate that it might have revealed a constitutional infirmity in the arrest. As to the other items, there were adequate alternate sources, that is, the final draft of the affidavit and the notes of the interview with Vroman. Therefore, we find no prejudice.

Petitioners also complain that they never received two items of evidence possessed by the state, an officer's notes of a confrontation he had with petitioners' car before the Vroman incident and a tape of an interview with Juanita Bill. As to the officer's notes, again the allegations are general and speculative. As to the tapes, they have been made a part of the record, and we agree with the district court that nothing in the

interview could conceivably raise a reasonable doubt that did not otherwise exist.

■ Finally, petitioners argue that the state had a duty to take plaster casts of tire and foot tracks at the scene of the crime for comparison with petitioners' car and feet. Although the state has a duty to disclose evidence, it does not have a duty to create evidence.

### IV. *Prosecutorial Misconduct*

■ Petitioners' next issue is that statements of the prosecution during closing argument were so improper as to warrant a mistrial. The prosecutor said he was concerned with the "absence of a defense" and that he thought the state's witnesses told the truth. We find the "absence of a defense" comment was not improper. Although the prosecution cannot comment on a defendant's failure to testify, *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), here the comment was not so directed. The defendants did not put on any witnesses at all. The prosecution can comment on the defense's failure to call any witnesses to contradict the government's case unless the defendant alone had the information to do so. *United States v. Hager*, 505 F.2d 737, 740 (8th Cir.1974). The defense strategy indicated by the opening statements, that the defendants had nothing to do with Vroman's injuries and were being persecuted because of a police officer's grudge is not of a nature that exculpatory information would be exclusively in the defendants' possession.

■ The prosecutor's comment on his belief as to the veracity of the witnesses was clearly improper. However, we do not think habeas relief is warranted in this case. The comment was preceded by the prosecutor's statement that it was the jury that would have to judge the credibility of

Juanita Bill. The court instructed the jury that questions of evidence were for the jury to decide, and the prosecutor reemphasized this point near the beginning of his summation. Thus, when we consider the statement in context, we do not think it deprived petitioners of due process warranting habeas relief.

### V. *Jury Instructions*

Petitioners' next argument is that the court erred in failing to give additional instructions when the jury submitted a question on separating the guilt of the three defendants. The trial court referred the jury to the instructions as a whole.

■ On direct appeals we consider a request for additional instructions as a matter addressed to the discretion of the trial court. *United States v. Gordon*, 455 F.2d 398, 402 (8th Cir.), *cert. denied*, 406 U.S. 970, 92 S.Ct. 2428, 32 L.Ed.2d 670 (1972). We are further restricted in habeas cases, because we can grant habeas relief only if an error regarding the instructions is of a constitutional magnitude. *Spratlin v. Solem*, 577 F.2d 56, 60 (8th Cir.1978). The jury's question indicated its difficulty stemmed from the fact that the evidence did not distinguish the conduct of each of the defendants.[4] In such a circumstance, we find no constitutional error in the trial court's decision not to supplement the instructions.

### VI. *Other Issues*

■ The six other points raised by petitioners are insubstantial and can be discussed briefly. First, petitioners argue they were denied a fair trial by the state's failure to endorse a witness within the time provided by state law. Petitioners suffered no prejudice because the witness was called only to establish a foundation for certain evidence and that evidence was not admit-

---

4. The question stated in its entirety:
   The instructions we received on No. 32 are as follows: The guilt or innocence of any one of the defendants of any of the crimes should not control or influence your verdicts respecting the other defendants. However, the case was submitted with the defendants as one and testimony does not separate the defendants into individuals. Therefore, we are having trouble with the separation of these defendants and individuals. From this we are having difficulty in the advent of doubt on each defendant as an individual.

ted. Second, petitioners argue they were denied due process by violations of state law when a judge who had denied their motion for reduction of bail presided over a post-conviction hearing and petitioners were not allowed to subpoena witnesses for that hearing. However, the failure to follow state procedures makes out a constitutional violation only if the failure to follow them renders the proceedings so fundamentally unfair they are inconsistent with the rudimentary demands of fair procedure. *Klimas v. Mabry,* 599 F.2d 842, 848 (8th Cir.1979) *rev'd on other grounds,* 448 U.S. 444, 100 S.Ct. 2755, 65 L.Ed.2d 897 (1980). Petitioners have not shown that the failure to follow state procedures made their post-conviction hearing fundamentally unfair.

Third, petitioners argue they were deprived the right to a fair trial by the introduction into evidence of photographs of Vroman after the beating showing a lot of blood. The admission of evidence raises a constitutional issue only where a specific constitutional protection is infringed or where the evidence is so prejudicial as to deny due process. *Davis v. Campbell,* 608 F.2d 317, 319 (8th Cir.1979). The photographs were relevant to proving serious bodily injury, an element of the charge of aggravated assault. We find no constitutional error in the trial court's weighing of the probative value against the possible prejudice. Fourth, petitioners argue the trial court deprived them of a fair trial by interrupting defense counsel's cross-examination of Juanita Bill and by the destruction of evidence. There is no merit to this claim. The destruction of evidence was discussed in section III. Regarding the interruptions, we agree with the district court that the trial court was merely trying to clarify counsel's questions and did not limit the scope of cross-examination.

Fifth, petitioners argue the evidence was insufficient. We discussed the evidence against petitioners in section III, and agree with the district court that the evidence supported the verdict. A habeas petitioner is entitled to relief on the claim of insufficiency of the evidence only if no rational trier of fact could find the petitioner guilty beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Vroman's statement that "a couple of Indians" beat him up does not make the evidence insufficient to support the verdict against all three defendants at trial. Considering Vroman's condition when he made the statement, the jury could reasonably conclude that Vroman was in fact beaten by all three defendants.

Sixth, petitioners argue their fourth amendment claim was not given a "full and fair" hearing as required by *Stone v. Powell,* 428 U.S. 465, 494–95, 96 S.Ct. 3037, 3052–53, 49 L.Ed.2d 1067 (1976). They say the hearing they had was inadequate because they lacked the police radio tape (which was reused the night it was made) and the court failed to appoint an expert to examine the erased tape. We discussed the importance of the tape in section III and concluded any benefit it would offer to petitioners' case was speculative. Its unavailability in no way made the hearing in state court less than full and fair.

Having examined the issues raised by petitioners, we find them to be without merit and accordingly affirm the judgment of the district court.