# United States Court of Appeals
## For the First Circuit

_____

No. 00-2556


DAMON BROWN,

Petitioner, Appellant,

v.

MICHAEL T. MALONEY, ET AL.,

Respondents, Appellees.

_____


APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Morris E. Lasker, Senior U.S. District Judge]

_____


Before

Boudin, Chief Judge,
Stahl, Senior Circuit Judge,
and Lynch, Circuit Judge.

_____


    Benjamin H. Keehn, Committee for Public Counsel Services, for
appellant.
    James J. Arguin, Assistant Attorney General, with whom Thomas
F. Reilly, Attorney General, was on brief, for appellee.

_____

October 11, 2001
_____

**LYNCH, Circuit Judge**. Damon Brown is a state prisoner convicted of armed assault with intent to murder and related charges arising out of a shooting spree that left several people injured during a Caribbean festival in Boston in 1993. His conviction was affirmed on appeal. Commonwealth v. Blake, 428 Mass. 57, 696 N.E.2d 929 (1998). Brown filed a federal petition for habeas corpus, which was denied by the district court. Petitioner Brown, ably represented, presents two issues, challenging the determinations of the Supreme Judicial Court of Massachusetts (SJC) as contrary to or an unreasonable application of clearly established U.S. Supreme Court constitutional precedent. 28 U.S.C. § 2254(d) (Supp. II 1996).

Brown's first attack is on the SJC's rejection of his constitutional challenge, based on Bruton v. United States, 391 U.S. 123 (1968), to the admission of testimony from two codefendants. His second attack is on the SJC's determination that there was adequate evidence to support his conviction of assault with intent to murder in light of what he claims is inadequate evidence as to one of the two theories of conviction.

Two theories had been argued by the prosecution: that Brown was a principal shooter and that, in any event, he participated in a joint venture with others in the shootings.  The SJC rejected Brown's argument that there was insufficient evidence of joint venture, and so rejected his argument that he was entitled to a new trial under the Massachusetts rule established in Commonwealth v. Plunkett.  422 Mass. 634, 664 N.E.2d 833, 834, 838 (1996) (holding that, if there is insufficient evidence to support one theory in an alternative theory murder conviction, then the defendant is entitled to a new trial).  Plunkett, as the opinion acknowledges, id. at 837, is more defendant-friendly than the parallel federal rule established in Griffin v. United States, 502 U.S. 46 (1991), which holds that no new trial is required on a multi-object conspiracy conviction where there is insufficient evidence on one object, but adequate evidence on other objects, id. at 54-56.  Brown asserts that the Supreme Judicial Court's factual determination was unreasonable, that a reasonable determination required use of the Plunkett rule, and that the state's failure, in turn, to apply the state Plunkett rule violates his federal due process rights.

We affirm the denial of habeas relief.

-3-

The evidence at trial, taken favorably to the conviction, shows Brown fired into the celebrating crowd after he attempted to snatch a gold chain from the neck of a man at the festival in the Dorchester neighborhood of Boston. As his victim pulled away, Brown pulled out an automatic pistol and started shooting at him. Two others, friends of Brown's, also started shooting, scattering the crowd. Several people were wounded in the shooting.

Brown was tried along with two codefendants who were charged with shooting into the crowd after Brown began firing. Brown's defense was that this was a case of misidentification. The defense was not strong: the first victim and at least one witness to the shootings knew Brown from high school and identified him. The defense countered this by questioning the reliability of eyewitness identification in the confusion of the crowd.

Brown's codefendants, Rentas and Blake, did not testify at trial, but their statements to the grand jury were introduced as evidence against Rentas and Blake. In those statements, the codefendants said that, on the evening in question, they, along

with Brown, were at a birthday party at Rentas's apartment, which was located near the site of the shooting. According to the codefendants' confused and somewhat contradictory statements, Brown was at the party from approximately seven o'clock in the evening until somewhere between eight and ten o'clock at night. The shooting took place, approximately, shortly after eight o'clock.

The Commonwealth had argued two different theories to the jury in support of the assault with intent to murder charges: that Brown was himself a principal shooter and that Brown was a joint venturer with Blake and Rentas. The jury was properly instructed as to both theories. It was also instructed not to use the statements made by one codefendant as evidence of guilt of a different defendant. The jury verdict of guilt on assault with intent to murder did not specify the theory or theories relied upon.

## II.

On appeal to the SJC, Brown argued that the admission at trial of the out-of-court statements of his codefendants violated his right to confront witnesses against him granted by the Sixth Amendment to the United States Constitution, as

-5-

articulated in Bruton, 391 U.S. 123.  In Bruton, the Supreme Court held that a nontestifying codefendant's confession that directly inculpated another defendant by name could not be admitted at trial, and the Confrontation Clause problem was not cured by a clear instruction to the jury to consider the statement only as evidence against the codefendant.  Id. at 137. Addressing Brown's Bruton claim, the SJC observed that "[a] codefendant's statement which becomes incriminating 'only when linked with evidence introduced later at trial,' however, generally does not offend the Sixth Amendment, so long as an adequate limiting instruction is given."  Blake, 696 N.E.2d at 932 (quoting Richardson v. Marsh, 481 U.S. 200, 208 (1987)).  Therefore, the SJC held that Bruton did not apply because the evidence did not expressly implicate Brown in the shooting and was even exculpatory.  Id. at 932-33.

Brown also argued he was entitled to a new trial under Plunkett because there was not sufficient evidence to support a guilty verdict under the joint venture theory.  The SJC rejected that based on its review of the record.  The court noted that "[e]vidence of a prior agreement between Brown and the others is not required because Brown's continued firing after being joined

-6-

by others supports the inference that . . . [they] shared the intent to aid each other" and noted that Brown was seen fleeing the scene with the others. Id. at 934. Brown also now argues, as he did in the district court and in his petition for rehearing to the SJC, that the failure to apply Plunkett constitutes a due process violation. However, he did not make this argument in his initial filings with the SJC. Nonetheless, the Commonwealth has not argued either waiver or a failure to exhaust, but has addressed the claim on the merits and so shall we.

III.

A habeas petition may not be granted unless the state court decision: (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's holdings on factual issues "shall be presumed to be correct" and the petitioner bears the burden of disproving factual holdings by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The "unreasonable application" prong under § 2254(d)(1) reduces to the question of whether the state court's derivation of a case-specific rule from the Supreme Court's jurisprudence on the point appears to be objectively reasonable. The test is not so stringent as to require that all reasonable jurists agree the state court decision was unreasonable. See Williams v. Taylor, 529 U.S. 362, 409-10 (2000); Hurtado v. Tucker, 245 F.3d 7, 12-17 (1st Cir. 2001) (rejecting state prisoner's habeas application based on insufficiency of evidence claim).

The SJC's decision does not discuss Brown's due process claim, since, as noted above, Brown did not raise this claim until his petition for rehearing. In the absence of reasoning on a holding from the state court on the issue, we cannot say the claim was "adjudicated on the merits" within the meaning of 28 U.S.C. § 2254(d). Therefore, we review the due process issue de novo as "we can hardly defer to the state court on an issue that the state court did not address." Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001).

IV.

Bruton issue

-8-

The parties hold fundamentally different views as to the reach of Bruton. Bruton granted a new trial, finding error in the admission in a joint trial of a nontestifying codefendant's confession which directly implicated the defendant. 391 U.S. at 125-26, 137. The Court held this violated the Confrontation Clause of the Sixth Amendment to the Constitution, even though the jury had been instructed not to consider the codefendant's statement on the issue of the defendant's own guilt. Id. at 137.

The Commonwealth takes the position that the alibi evidence from the codefendants was exculpatory on its face, that the SJC was correct in so viewing it, and that Bruton does not apply to codefendants' statements which appear to be exculpatory. The real question, initially, is not whether the statement is exculpatory, but whether it is inculpatory.

Brown rejoins that the so-called alibi evidence was not exculpatory at all, but was in fact inculpatory. It was, he stresses, offered by the prosecution and inculpated him in two senses. First, it put him within a few hundred yards of the shooting at about the time of the crime. Second, if the jury

-9-

concluded the alibi was false, the giving of an alibi showed consciousness of guilt.

On the first point, Brown notes that the trial began with the jurors viewing the location of the crime scene and of Rentas's apartment. A juror with knowledge of the neighborhood might not even need the view to make the connection. Thus, without more, the jurors knew from the codefendants' statements that Brown was within easy reach of the crime scene during the relevant period of time. Indeed, Rentas gave an imprecise estimate of when Brown left the party -- anytime between "[l]ike an hour" after seven (that is, just before the shooting) and nine-thirty. From this, Brown says the evidence was inculpatory without requiring much linkage to other evidence at all, and so is not governed by the Supreme Court's holding in Richardson v. Marsh, 481 U.S. 200 (1987), discussed below.

On the false alibi theory of inculpation, Brown relies on a 1983 Sixth Circuit opinion, Lyle v. Koehler, 720 F.2d 426, 429-35 (6th Cir. 1983). That case analyzed as a Bruton problem the introduction of letters from a codefendant attempting to establish a false alibi for both the codefendant and Lyle

(referred to by a different name), which incriminated Lyle by connecting him with the attempt to obtain a false alibi. Id.

Further, Brown argues the admission of the codefendants' statements harmed him by limiting his ability to disclaim his statements, made to a police detective, who testified that Brown told police that he was at Rentas's apartment the night of the shooting. It is pure fiction to think this evidence, sponsored by the prosecution, is exculpatory, Brown says.[1] Rather, he argues, it should be thought of as inculpatory, not exculpatory. Indeed, the SJC found that the alibi statements were admissible as consciousness of guilt evidence, in light of the testimony of eyewitnesses to the shooting which tended to establish the falsity of the alibis. Blake, 696 N.E.2d at 931 n.5.

The Commonwealth replies that even if the evidence had the effect of inculpating Brown, it was not facially inculpatory and so Bruton, as limited by subsequent Supreme Court cases,

---

[1] Of course, the fact that the prosecution offered the evidence does not itself mean that Bruton's inculpatory evidence test has been met. In every Supreme Court case dealing with Bruton, whether the Court found a Bruton problem or not, the prosecution offered the evidence.

-11-

e.g., Richardson, 481 U.S. at 208, does not apply. If the evidence becomes inculpatory only by reviewing other evidence in the record, the Commonwealth argues, then such evidence is also not within Bruton. The Commonwealth's view is that Bruton does not apply if the codefendant's statement is not facially inculpatory or if linkage is required to make it inculpatory. The Commonwealth further asserts that, in any event, it could hardly be contrary to, or an unreasonable application of, existing Supreme Court precedent for the SJC to conclude that Bruton does not apply.

The parties each rely on Supreme Court cases, which further elaborate on the Bruton rule, to support their arguments. The Commonwealth relies on Richardson, which held that Bruton did not apply to a codefendant confession which "was not incriminating on its face, and became so only when linked with evidence introduced later at trial," arguing this limits Bruton to facially incriminating statements. 481 U.S. at 208; id. at 203-04, 211 (holding that redacted codefendant confession that did not mention defendant's presence when crime was being planned was not covered by Bruton, despite fact that jury learned of defendant's presence from later evidence). In

-12-

<u>Richardson</u>, the Court rejected a "contextual implication" interpretation of <u>Bruton</u>, which "would presumably require the trial judge to assess at the end of each trial whether, in light of all of the evidence, a nontestifying codefendant's confession has been so 'powerfully incriminating' that a new, separate trial is required." <u>Id.</u> at 209.

Brown cites <u>Gray</u> v. <u>Maryland</u>, 523 U.S. 185, 188 (1998), which held that the <u>Bruton</u> rule applies to codefendant's statements where the defendant's name has been replaced by a blank space or redaction symbol, and <u>Cruz</u> v. <u>New York</u>, 481 U.S. 186, 193 (1987), which held that the <u>Bruton</u> rule applies even where the codefendant's statement merely corroborates defendant's own confession. He argues that <u>Gray</u> and <u>Cruz</u> focus the <u>Bruton</u> inquiry on the effect of the codefendant statements upon the jury. For instance, in <u>Gray</u>, the Court held that a "jury will often realize that [a redacted] confession refers specifically to the defendant" and "the obvious deletion may well call the jurors' attention specifically to the removed name." <u>Gray</u>, 523 U.S. at 193. In <u>Cruz</u>, the Court emphasized that the "codefendant's confession will be . . . enormously damaging if it confirms, in all essential respects, the

-13-

defendant's alleged confession" where, "in the real world of criminal litigation, the defendant is seeking to avoid his confession." 481 U.S. at 192. More significantly, Gray modified any reading of Richardson as applying whenever the jury had to rely on any context or inference at all. Gray said that it is the type of the inference, and not the fact of the inference, which is important. Gray, 523 U.S. at 195-96. See B. Rosenberg, The Future of Codefendant Confessions, 30 Seton Hall L. Rev. 516, 528-36 (2000). On habeas review, our task is not to resolve these tensions, but only to resolve the question of whether the state court decision is contrary to, or an unreasonable application of, clearly established Supreme Court constitutional rulings.

It is plain here, from the very discussion above, that the SJC decision is not "contrary to" clearly established Supreme Court precedent. The facts of this case do not fit the patterns of the decided Supreme Court cases. The SJC's ruling is also not an unreasonable application of such precedent. This is not the archetypal powerful evidence of a confession from a codefendant that also implicates the defendant, as in Bruton. Here, there were no confessions at all from codefendants that

-14-

implicated Brown. There were also no confessions merely establishing the existence of another guilty party, which the jurors could infer was Brown. Nonetheless, the SJC adopted Brown's argument that the hearsay evidence claim was appropriately analyzed under Bruton. Here, there were simply alibi statements from codefendants, which some observers would view to be inculpatory, while others would not. The "alibi" statements of the codefendants say they were at a party with defendant when the shootings took place. That was exculpatory. But the fact that the place of the party was very close to the place of the shootings and that it was a party, with people coming and going, undercut Brown's defense, and so was inculpatory.

The SJC cited both to Gray and to Richardson, the pertinent Supreme Court opinions. It was certainly reasonable for the SJC to conclude that the facts here were more within the Richardson ambit than the Gray ambit: there was no confession which facially incriminated Brown; the information became somewhat incriminating when it was shown at trial that the alibi location was very close to the crime location. And the trial judge gave a limiting instruction that each statement was to be

-15-

used only against the defendant who said it.  In the absence of powerful incriminating evidence such as the confession in Bruton, it was not an unreasonable judgment by the SJC that the jury would follow these instructions.

Brown's argument that the evidence, by putting him in the vicinity of the crime, was inculpatory is not frivolous. But it is not unreasonable for the SJC to conclude there is no clearly established Supreme Court precedent that admission of evidence of this sort, which may be inculpatory but is not a confession directly implicating Brown, violates Bruton.

Brown's argument is less strong as to the second theory of inculpation -- false alibi.  Even if the Sixth Circuit precedent in Lyle is read to support his position, it is Supreme Court precedent that is the focus under § 2254.

On these facts, Brown has not met the standard for habeas relief.


General Verdict and Two Theories of Guilt

Brown's second argument hinges on transforming a state appellate rule as to appropriate remedy, which is more favorable to defendants than the constitutional rule set by the Supreme

-16-

Court, into a constitutional right. Brown makes a three step argument. He argues that there was insufficient evidence to support the joint venture theory, even if there was adequate evidence to support his liability as a principal. He next says he was entitled to a new trial under Plunkett. Thirdly, from this, he argues, his due process rights under the United States Constitution were violated. We take the argument in stages.

In order to prove a joint venture under Massachusetts law, the Commonwealth must establish as elements: (1) that the defendant was "present at the scene of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit a crime, and (3) by agreement is willing and available to help the other if necessary." Commonwealth v. Green, 420 Mass. 771, 652 N.E.2d 572, 578 (1995). Brown argues that the SJC findings supporting the joint venture theory, specifically the finding that he continued firing after his codefendants fired, are an objectively unreasonable conclusion because the SJC misread what is the actual evidence on the record. In support of this, he cites witness testimony that there were three separate rounds of fire, likely attributable separately to the three codefendants. He further argues that

the evidence, on which the SJC relied, concerning the codefendants' joint flight was legally irrelevant, as evidence of post-incident cooperation does not speak to the question of whether Brown knew that his codefendants would step in to support him.

The district court rejected these arguments, finding that the SJC's factual conclusion was objectively reasonable. The district court buttressed the SJC's conclusion by noting also that the codefendants knew each other and were at a party together before the incident occurred. Brown v. Maloney, No. 99-CV-10731-MEL, slip op. at 6-7 (D. Mass. Nov. 2, 2000).

We consider this a close question, even with the presumption of correctness. Brown's argument, from the evidence, is far from frivolous. The evidence as to joint venture was very thin indeed and, unlike the usual sufficiency of the evidence argument made on habeas, we have no way of knowing whether the jury here found the evidence on joint venture sufficient. Cf. Hurtado, 245 F.3d at 19 ("[F]ederal courts should be particularly cautious
about issuing habeas, on grounds of the objective unreasonableness of a state court's conclusion that the evidence

-18-

is sufficient, where there has been a verdict of guilt by a jury of a defendant's peers, where the defendant's credibility was evaluated by the jury hearing his testimony, where that verdict has been affirmed on appeal in the state system, and where there is no claim of constitutional error in the conduct of the trial."). The evidence on the "principal" theory of guilt was far stronger and, in our view, the far more likely basis for the conviction. But we need not reach the question of whether the state court made an "unreasonable determination of the facts" under 28 U.S.C. § 2254(d)(1) as to joint venture because Brown's argument falters in its latter stages.

In order to prevail on a habeas claim, Brown must here show that his conviction was based upon a violation of the Constitution. We do not need to reach Brown's broader contention that some violations of state law may infringe liberty interests sufficiently to amount to a violation of federal constitutional rights. Cf. Hicks v. Oklahoma, 447 U.S. 343 (1980) (due process violation where state created a right to be sentenced by the jury, jury was instructed to sentence under statute later held unconstitutional and jury may well have, if properly instructed, imposed much lesser sentence). Due process

problems in the application of state laws by state courts most frequently arise under the ex post facto clause and related due process constraints when the state changes a law or a rule. See, e.g., Hamm v. Latessa, 72 F.3d 947 (1st Cir. 1995). That is not the situation here: the state has not changed its rule, but rather has concluded that, based on its factual determinations, the rule does not apply. If the state court, on a close question, erroneously drew certain factual conclusions, that alone does not establish a due process violation.

Under federal constitutional law, in contrast to Massachusetts law, Brown has no right to a new trial as a remedy where his claim is that there was insufficient evidence to support one theory of conviction on the count but concedes that there was sufficient evidence as to the other theory. Griffin, 502 U.S. at 60. Brown's argument, based solely on factual inadequacy, does not fit within the exception to the Griffin rule for convictions that rest on a theory resulting from error of law or unconstitutionality. See United States v. Nieves-Burgos, 62 F.3d 431, 435-36 (1st Cir. 1995) (discussing exception). Brown's claim fails at the third stage of his argument. Brown argues that if the SJC failed to follow its own

_Plunkett_ rule, then that deviation amounts to a deprivation of his due process rights protected by the federal Constitution. Ordinarily a federal court may not issue a writ "based on a perceived error of state law," although there may be an exception "if an error of state law could be sufficiently egregious to amount to a denial of equal protection or of due process of law." _Pulley_ v. _Harris_, 465 U.S. 37, 41 (1984). _See also_ _Barclay_ v. _Florida_, 463 U.S. 939, 957-58 (1983) (plurality opinion) ("[M]ere errors of state law are not the concern of this Court unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution.") (citation omitted). But even if the SJC made an unreasonable determination of the facts here, we cannot say that its failure to apply its own judicially-crafted rule of granting new trials in dual theory/general verdict cases rose to the level of a deprivation of due process where the federal rule governing the same situation would not require a new trial. _See_ _Barclay_, 463 U.S. at 969-70 (Stevens, J., concurring) (noting that, although state court may have considered aggravating factors not allowed by state law, there was no federal constitutional violation); _Richards_ v. _Solem_, 693 F.2d 760, 767

-21-

(8th Cir. 1982) ("[F]ailure to follow state procedures makes out a constitutional violation only if the failure to follow them renders the proceedings so fundamentally unfair they are inconsistent with the rudimentary demands of fair procedure."). There was nothing fundamentally unfair about the conclusion the SJC reached, and so there was no basis for Brown's due process claim.

V.

Conclusion

The denial of the habeas petition is affirmed.