Roy v. Coplan, NHSP                    CV-03-206-JD  03/25/04

UNITED STATES DISTRICT COURT FOR THE
                        DISTRICT OF NEW HAMPSHIRE


Steven J. Roy

        v.                              Civil No. 03-206-JD
                                        Opinion No. 2004 DNH 056
Jane Coplan, Warden,
New Hampshire State Prison


                        O R D E R


    Steven J. Roy, proceeding pro se, seeks relief pursuant to
28 U.S.C. § 2254 from his state conviction and sentence for first
degree murder.  Both Roy and the Warden have moved for summary
judgment.  Their motions are resolved as follows.


                        Background

    Pertinent background information is taken primarily from the
decisions of the New Hampshire Supreme Court in Roy's direct
appeal from his conviction, State v. Roy, 140 N.H. 478 (1995),
cert. denied, 123 S. Ct. 2094 (2003), and his appeal from the
denial of his motion for a new trial, State v. Roy, 148 N.H. 662
(2002), cert. denied, 123 S. Ct. 2094 (2003).  The factual
findings reported in those decisions are presumed to be correct,
and Roy has not demonstrated otherwise.  28 U.S.C. § 2254(e).
Some additional factual detail is taken from record materials in
this case.

Steven Roy operated a business, Wizard Software, out of the basement of his home in Fremont, New Hampshire.  In 1992, Joanna Kozak worked for the business and lived in Roy's home.  Maria Zarate, the mother of Roy's children, also lived in the house with Roy and Kozak and the children.  Animosity developed between Zarate and Kozak.  Charles Kelley, known as C.J. Kelley, was another Wizard employee, hired by Roy to do odd jobs.

On June 27, 1992, Roy and Kozak left the house to go for a dirt bike ride.  Kozak never returned from the ride.  Roy told Zarate that Kozak had packed her belongings and left because she was a fugitive from justice.  However, later Roy told Zarate that he bludgeoned Kozak to death on the day they went for the dirt bike ride and that he had buried her in an isolated cemetery and disposed of her belongings with the help of C.J. Kelley.

Zarate decided to leave Roy in October of 1992.  While waiting at the Manchester Airport, she anonymously called the Epping Police Department to report that a crime had been committed at the Scribner Cemetery in Raymond, New Hampshire. Zarate was interviewed by the FBI in November, and Kozak's body was discovered at the Scribner Cemetery on December 10, 1992, by the New Hampshire State Police.  On March 16, 1993, C.J. Kelley gave a statement to the state police in which he stated that Roy killed Kozak and that he, Kelley, had helped bury the body.

Kelley was indicted for his role in assisting to conceal the murder.

Roy was arrested on April 12, 1993, and charged with first degree murder in Kozak's death. The trial began on October 26, 1993. Maria Zarate was the state's lead witness. The defense hoped to call C.J. Kelley as a witness, but he asserted his Fifth Amendment privilege and refused to testify. The state refused to grant Kelley immunity for his testimony, and the court denied the defense motion to require the state to request use immunity for Kelley's testimony. The state then moved to exclude Kelley's statement to investigators, which was granted.

The issue of C.J. Kelley's involvement in the crime was nevertheless part of the trial. The defense theory, raised in defense counsel's opening statement, was that Kelley and Zarate killed Kozak and implicated Roy. During cross-examination of New Hampshire State Police Detective David Kelley, defense counsel elicited testimony that the detective had interviewed C.J. Kelley for more than four hours, and on re-direct the state confirmed that Kelley had been indicted for his part in the murder. The prosecutor then asked if Kelley had admitted that he helped to bury Kozak's body. Defense counsel objected to the question and moved for a mistrial. After a hearing on the motion for a mistrial, the court denied the motion, gave a curative

3

instruction to the jury, and resumed the trial.

The jury found Roy guilty of first degree murder.  On appeal, Roy contended that his conviction should be reversed because the trial court failed to compel the state to request use immunity for C.J. Kelley and failed to grant a mistrial after the state asked Detective Kelley about C.J. Kelley's inadmissible statement.  Roy's conviction was affirmed on December 6, 1995.

In April of 1996, Roy moved for a new trial on the ground that "his counsel's references to [C.J. Kelley's] inadmissible statements improperly waived his constitutional right to confrontation."  Roy, 148 N.H. at 663.  After the proceedings were delayed for five years while efforts were made to resolve issues of attorney client privilege and waiver, the trial court ruled that "(1) the defendant's constitutional right to confrontation was not waived by counsel's conduct; and (2) counsel's trial strategy was reasonable."  Id.  The New Hampshire Supreme Court affirmed that decision on December 16, 2002.

Standard of Review

A federal court may not grant a habeas petition "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the state court decision "was contrary to, or involved an unreasonable application of, clearly

4

established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[1]  28 U.S.C. § 2254(d); see also Price v. Vincent, 123 S. Ct. 1848, 1852 (2003).  That standard, however, applies only to claims adjudicated on the merits; not to claims that were raised in state court proceedings but never addressed. See Norton v. Spencer, 351 F.3d 1, 5 (1st Cir. 2003).  If a claim was properly raised but not adjudicated on the merits in the state court proceedings, this court reviews the claim under a de novo standard.  Id.

Adjudication on the merits does not mean that the state court necessarily decided the claim under federal law, and a state court's decision is not "contrary to" federal law due to a

---

[1]The Warden's motion and memorandum, filed on her behalf by Assistant Attorney General Nicholas Cort, is unhelpful in resolving the issues raised in this habeas proceeding.  Cort states that review is "principally governed by 28 U.S.C. § 2254(d)(1) (2000)," without further explanation, and then cites decisions from state courts and other circuits when the standard requires Supreme Court precedent.  Cort also provides little analysis of three of the four issues raised.  As this court previously stated in Merritt v. Warden, 2004 DNH 043, at *6 n.2 (March 11, 2004), a habeas case in which Cort also represented the Warden:  "The court expects attorneys appearing before it to be thoroughly familiar with the law relating to the subject matter in controversy and to present well considered motions and memoranda.  Anything short of this does little to advance the resolution of a case."

lack of citation to any federal precedent.  Early v. Packer, 537 U.S. 3, 8 (2002).  "[A] state court need not even be aware of [Supreme Court] precedents, so long as neither the reasoning nor the result of the state-court decision contradicts them." Mitchell v. Esparza, 124 S. Ct. 7, 10 (2003) (internal quotation marks omitted).  A state court's decision is "contrary to" clearly established Supreme Court precedent if it "'applies a rule that contradicts the governing law set forth in our cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'"  Id. (quoting Williams v. Taylor, 529 U.S. 362, 405-406 (2000))(citing Price, 123 S. Ct. at 1853).  A state court decision is an unreasonable application of federal law if it is "shown to be not only erroneous, but objectively unreasonable."  Yarborough v. Gentry, 124 S. Ct. 1, 4 (2003).


                          Discussion

     Roy raises four claims in support of his petition for habeas relief:  (1) denial of the right to confrontation, arising from references to the statement of a non-testifying witness, C.J. Kelley, (2) ineffective assistance of trial counsel, (3) denial of due process arising from the New Hampshire Supreme Court

                              6

decisions, and (4) denial of due process based on the trial court's jury instruction regarding references to C.J. Kelley's statement. The first two claims were addressed by the state courts in ruling on Roy's motion for a new trial. The third and fourth claims, however, were raised on appeal from the denial of Roy's motion for a new trial but were not addressed in the New Hampshire Supreme Court's decision.

A. Denial of the Right to Confrontation

Roy contends that his Sixth Amendment right to confront witnesses against him was denied when his own counsel and the prosecutor referred to C.J. Kelley's statement, which implicated Roy in Kozak's murder, and Kelley was not available for cross-examination. Roy refers to this violation as a "Bruton-type" error, casting C.J. Kelley as his "codefendant." The New Hampshire Supreme Court found no error.

In Bruton v. United States, 391 U.S. 123 (1968), the Supreme Court held that a defendant may be deprived of his Sixth Amendment Confrontation Clause rights when the government introduces the confession of a non-testifying co-defendant in a joint trial.[2] United States v. Lopez-Lopez, 282 F.3d 1, 12 (1st

---

[2]"Bruton involved two defendants accused of participating in the same crime and tried jointly before the same jury. One of

Cir. 2002). The Supreme Court has also held that "the admission of a nontestifying accomplice's confession, which shifted responsibility and implicated the defendant as the triggerman, 'plainly denied [the defendant] the right of cross-examination secured by the Confrontation Clause.'" Lilly v. Virginia, 527 U.S. 116, 131 (1999) (quoting Douglas v. Alabama, 380 U.S. 415, 419 (1965)); see also Crawford v. Washington, 2004 WL 413301 (U.S. Mar. 8, 2004). To implicate a defendant's rights under the Confrontation Clause, an accomplice's confession, which is used at trial, must be directly and powerfully incriminating. Gray, 523 U.S. at 190-92 (discussing Bruton and Richardson v. Marsh, 481 U.S. 200 (1987)); Frazier v. Cupp, 394 U.S. 731, 734-35 (1969) (mere inferences from prosecutor's opening statement about expected testimony and witness's invocation of Fifth Amendment privilege not Confrontation Clause violation with limiting instruction); see also Lopez-Lopez, 282 F.3d at 13; Brown v. Maloney, 267 F.3d 36, 39-42 (1st Cir. 2001).

The New Hampshire Supreme Court held that defense counsel's

---

the defendants had confessed. His confession named and incriminated the other defendant. The trial judge issued a limiting instruction, telling the jury that it should consider the confession as evidence only against the codefendant who had confessed and not against the defendant named in the confession. Bruton held that, despite the limiting instruction, the Constitution forbids the use of such a confession in the joint trial." Gray v. Maryland, 523 U.S. 185, 188 (1998).

8

references to C.J. Kelley's statement during Roy's trial were not Bruton errors because counsel did not disclose any part of the statement to the jury.  See Roy, 148 N.H. at 665.  In the absence of any disclosure of the statement, the court concluded that counsel's references were not "the sort of powerfully incriminating evidence at issue in Bruton."  Id.  Roy candidly acknowledges that he found no Supreme Court cases addressing a Bruton violation arising from defense counsel's references to an accomplice's confession, and this court has found none.  In addition, as the New Hampshire Supreme Court ruled, while Bruton and its progeny pertain to the damaging effects of a powerfully incriminating statement that is not subject to cross-examination, no Supreme Court case has held that mere references to an accomplice's statement or confession raise the same constitutional concerns.  Therefore, the New Hampshire Supreme Court's decision that defense counsel's references to C.J. Kelley's statement did not cause a Bruton error is neither contrary to nor an unreasonable application of Supreme Court precedent.[3]

---

[3]Roy contends that he did not waive his Sixth Amendment rights at trial because he did not expressly authorize his counsel's trial strategy.  The state courts did not resolve the waiver issue because of attorney-client privilege problems.  Therefore, this court does not consider whether defense counsel can violate the Confrontation Clause rights of his or her own

The New Hampshire Supreme Court did not address the Confrontation Clause issue raised here that the prosecutor's question on re-direct examination of Detective Kelley about C.J. Kelley's statement also was a <u>Bruton</u> error.  In its decision on the direct appeal, the supreme court considered the prosecutor's question only in the context of whether the trial court erred in failing to grant the defense motion for a mistrial.[4]  Because the issue was raised but was not addressed by the New Hampshire Supreme Court on appeal from the denial of Roy's motion for a new trial, for purposes of habeas review, this court will address the issue under a de novo standard.  <u>See</u> <u>Norton</u>, 351 F.3d at 5.

The challenged part of the prosecutor's examination of Detective Kelley on re-direct proceeded as follows:

---

client through trial strategy decisions.  <u>Cf.</u> <u>United States v. Plitman</u>, 194 F.3d 59, 64 (2d Cir. 1999) (discussing counsel's waiver of client's Sixth Amendment right).

[4]Based on the supreme court's decision in Roy's direct appeal, in which he both appeared pro se and was represented by appointed counsel, it does not appear that he raised a Confrontation Clause issue.  Instead, and to the contrary, Roy argued that the trial court's failure to require the state to grant C.J. Kelley use immunity for testimony at his trial violated his due process rights.  The Confrontation Clause issue appears to have been raised for the first time in Roy's motion for a new trial, and the trial court concluded that no <u>Bruton</u> error occurred.  Although Roy appealed that issue, the supreme court did not address it.

10

Q. Mr. Kelley, C.J. Kelley's been indicted for helping
Steven Roy bury the body of Joanna Kozak, hasn't he?

A. Yes he has.

Q. And he admitted to you that he helped bury the body,
came to the cemet[e]ry and helped bury the body during
that interview?

Roy, 140 N.H. at 480. After the second question, defense counsel objected and moved for a mistrial before Detective Kelley answered. The trial court instructed the jury to disregard the last question completely and adjourned the trial for the day. After denying the motion for a mistrial, the court resumed the trial and gave a lengthy curative instruction to the jury.

Although Detective Kelley did not answer the last question, Roy argues that it was asked in such as way as to state C.J. Kelley's admission without needing an answer. Even if that were true, such a disclosure would be insufficient to violate the Confrontation Clause under the Bruton rule. As presented in the question, the admission would be that C.J. Kelley helped bury Kozak's body. There is no mention of anything that inculpates Roy. As such, the admission "neither name[s] nor impugn[s] [the defendant] directly, and thus cannot be supposed to have implanted in the jurors' minds the kinds of powerfully incriminating impressions against which Bruton protects." United States v. Sotomayor-Vazquez, 249 F.3d 1, 11 (1st Cir. 2001)

11

(internal quotation marks omitted).  In addition, without a Bruton error, the jury is presumed to follow the court's curative instruction to disregard the improper question.  See Richardson, 481 U.S. at 206-07.  Therefore, the prosecutor's improper question about C.J. Kelley's admission did not violate Roy's Confrontation Clause rights.


B.  Ineffective Assistance of Counsel

Roy was represented by Barbara Keshen, Esquire, and James Moir, Esquire, through his trial.  He contends that Keshen and Moir were ineffective in their representation of him because Keshen disclosed C.J. Kelley's accusation of him in her opening statement and again raised C.J. Kelley's accusation during her cross-examination of Detective Kelley.  Specifically, Roy argues that Keshen's opening statement informed the jury that C.J. Kelley had accused Roy of murdering Kozak, which corroborated the testimony of the state's key witness, Maria Zarate.

Roy contends that Keshen's cross-examination of Detective Kelley reinforced that disclosure when she demonstrated, using an easel, that Roy was arrested after police interviewed C.J. Kelley.  Keshen's use of C.J. Kelley's statement to police, Roy asserts, left him subject to accusations by both Kelley and

12

Zarate, without the opportunity to have Kelley's statement tested by cross-examination. Instead, Roy asserts, his counsel should have discredited Zarate and presented the theory of a conspiracy between C.J. Kelley and Zarate without implicating him. He contends that the incriminating implication from references to C.J. Kelley helped the prosecution prove its case. As such, Roy argues that Keshen's strategy choice was unreasonable and prejudiced his defense.

"To successfully claim ineffective assistance of counsel under the Sixth Amendment, a defendant must establish that his counsel's performance fell below an objective standard of reasonableness and 'that there was a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different.'" United States v. Theodore, 354 F.3d 1, 5-6 (1st Cir. 2003) (quoting and citing Strickland v. Washington, 466 U.S. 668, 687-94 (1984)). Habeas review of counsel's performance "'must be highly deferential,'" based on the circumstances when the tactical choices were made, not on hindsight. Ouber v. Guarino, 293 F.3d 19, 25 (1st Cir. 2002) (quoting Strickland, 466 U.S. at 689). Counsel's tactical choices are constitutionally deficient only if "the net reckoning is patently unreasonable." Epsom v. Hall, 330 F.3d 49, 54 (1st Cir. 2003). Stated in other terms, because "counsel is strongly

13

presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment,' counsel's 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" Phoenix v. Matesanz, 233 F.3d 77, 82 (1st Cir. 2000) (quoting Strickland, 466 U.S. 690).

The New Hampshire Supreme Court articulated the applicable standard, taken from state law, as follows: "To successfully assert a claim for ineffective assistance of counsel, a defendant must first show that counsel's representation was constitutionally deficient and, second, that counsel's deficient performance actually prejudiced the outcome of the case." Roy, 148 N.H. at 664. The court recognized the broad discretion afforded to trial counsel in determining trial strategy and a "presumption that counsel's trial strategy was reasonably adopted." Id. (internal quotation marks omitted). The court concluded that Roy had not demonstrated that his counsel's performance was deficient and therefore did not address the prejudice part of the analysis. Id.

The trial court, affirmed by the New Hampshire Supreme Court, found that the "[d]efendant's trial attorney in her opening remarks suggested that the evidence would show that both the State's chief witness, Maria Zarate, and C.J. Kelley had the

14

motive and opportunity to kill the victim."[5]  <u>State v. Roy</u>, 93-S-794, at *7 (N.H. Sup. Ct. May 7th, 2001).  The defense theory was that Kelley and Zarate murdered Kozak and conspired to blame the crime on Roy, and "[c]ounsel's references to C.J. Kelley's involvement were made to establish the conspiracy theory link between him and Zarate."  <u>Roy</u>, 148 N.H. at 665.  The trial court ruled:  "Given the nature of the State's evidence, that strategy was not only sound but perhaps the only viable one available to the defense."  <u>Roy</u>, 93-S-740 at *7-8.  The supreme court held that Roy had not offered "any alternatives that render counsel's choice of strategy unreasonable."  <u>Roy</u>, 148 N.H. at 665.

Contrary to Roy's characterization of counsel's references to C.J. Kelley, she did not concede any aspect of the state's case and instead attempted to use Kelley's statement in Roy's favor.  <u>Cf.</u> <u>Scarpa v. Dubois</u>, 38 F.3d 1, 10-11 (1st Cir. 1994).  As the state courts found, counsel attempted to use damaging evidence to support the defense.  As the New Hampshire Supreme Court properly concluded, to be constitutionally deficient, the choice of strategy must be "unreasonable" and Roy did not show that it was.  Therefore, the supreme court's decision is neither contrary to nor an unreasonable application of Supreme Court precedent.

─────────────────────────

[5]The trial transcript also confirms the court's summary of Roy's trial counsel's opening.

15

C.  Denial of Due Process Arising from the Introduction of C.J.
    Kelley's Statement

Roy contends that the New Hampshire Supreme Court decisions violated due process.[6]  Roy now claims that the New Hampshire Supreme Court violated due process by twice upholding his conviction based on reasoning that was contrary to clearly established law interpreting the Confrontation Clause.  Roy's argument appears to be that because, as he contends, the references made by the prosecutor and his own counsel to C.J. Kelley violated his Confrontation Clause rights, the supreme court's decisions finding no Confrontation Clause violation violated his right to due process.  If that is his claim, Roy does not state a basis for habeas relief.

Pursuant to § 2254, a writ of habeas corpus may be considered "only on the ground that [the applicant] is in custody in violation of the Constitution or laws or treaties of the United States."  § 2254(a).  When a conviction is challenged based on the legal grounds for the state court's decision, a writ

_____

[6]Although Roy raised a due process issue in his notice of appeal from the denial of his motion for a new trial, asserting that the trial court's decision denied him due process and a fair trial, the New Hampshire Supreme Court did not address that issue.  The issue Roy raises here is different.  To the extent the claim raised for purposes of habeas relief in this court was not exhausted in the state court proceedings, the court will nevertheless address the claim pursuant to § 2254(b)(2).

will not be granted unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).  Therefore, § 2254 does not permit relief based on a claim that the state court's misapplication of federal law amounted to a violation of due process.

As is discussed above, Roy has not demonstrated that he is entitled to relief based on the asserted violations of the Confrontation Clause.  To the extent he intended to argue that the references to C.J. Kelley's statement were also a violation of due process, he has not shown that clearly established federal law exists to support such a claim.  Although Justice Harlan indicated that due process, rather than the Confrontation Clause, might protect a defendant from the use at trial of an accomplice's confession, see Dutton v. Evans, 400 U.S. 74, 98 (1970) (Harlan, J. concurring), that minority view has never become part of established Supreme Court jurisprudence, see Crawford, 2004 WL 413301.  See also Depree v. Thomas, 946 F.2d 784, 792 (11th Cir. 1991); Thompson v. Lynaugh, 821 F.2d 1054, 1062 (5th Cir. 1987); United States v. Dailey, 759 F.2d 192, 196-97 (1st Cir. 1985).

17

D.   Denial of Due Process Based on the Trial Court's Jury
     Instruction Regarding C.J. Kelley's Statement

     In his last claim, Roy challenges the trial court's jury instruction that was given following the prosecutor's unanswered question to Detective Kelley about C.J. Kelley's admission.  Roy contends that the instruction violated due process by reinforcing the previous Bruton errors, by introducing inferences based on C.J. Kelley's claim of privilege, and by providing the jury with too much information about C.J. Kelley's guilt.  Because the New Hampshire Supreme Court did not address this issue, it is reviewed de novo.

     The prosecutor asked Detective Kelley whether C.J. Kelley had admitted, during an interview, that he helped bury Kozak's body.  Defense counsel objected immediately, and the question was not answered.  The trial judge instructed the jury to disregard the question, reminding them that the question had not been answered, and adjourned the trial.

     When the trial resumed several days later, the judge gave a lengthy instruction on the unanswered question.  He reminded the jury that the unanswered question "made some reference to a statement allegedly made by C.J. Kelley."  Petitioner's "Response to Court's 6/24/2003 Order," excerpt of 1995 state brief (quoting transcript of instruction) at 14.  The judge informed the jury

18

that because the question was legally improper, the jury was not to speculate as to the answer.  He stated that Kelley was not going to testify because he had been charged with certain crimes relating to Kozak's murder and had elected to assert his Fifth Amendment privilege not to testify.  Because Kelley would not testify, the judge explained, it would be unfair for the jury to consider any statement Kelley might have made to the police, and he again instructed them to disregard the last question asked by the prosecutor.

As is discussed above, to implicate a defendant's rights under the Confrontation Clause, an accomplice's confession, which is used at trial, must be directly and powerfully incriminating. Gray, 523 U.S. at 190-92 (discussing Bruton and Richardson); see also Lopez-Lopez, 282 F.3d at 13; Brown, 267 F.3d at 39-42. Considering defense counsel's challenged remarks and the prosecutor's question under that standard for purposes of de novo review, no "Bruton-type" violation occurred in this case.  C.J. Kelley's admission was not used at trial.  To the extent any inferences might have been drawn from the statements made about C.J. Kelley's admissions, any such inferences were not sufficiently incriminating of Roy to raise a Confrontation Clause issue.  The court's instruction could not reinforce violations that did not occur.

19

When a witness takes the stand in a criminal trial but invokes his Fifth Amendment privilege, inferences against the defendant from the witness's refusal to answer may violate the Confrontation Clause.[7] Douglas, 380 U.S. at 420; cf Frazier, 394 U.S. at 734-35; see also Namet, 373 U.S. at 185-86 (considering whether evidentiary error occurred but not considering constitutional issue). C.J. Kelley did not testify in this case. The court explained that he was not testifying because of the privilege and cautioned the jury not to consider any part of the improper question referring to Kelley's admission.

Generally, courts presume that jurors follow their instructions. See, e.g., Richardson, 481 U.S. at 211. Nothing in the circumstances of this case suggests that the jury did not follow the clear and explicit instruction given by the trial court. Therefore, no due process or Confrontation Clause violation occurred based on the jury instruction.

---

[7]Some courts have referred to a due process violation in the context of prosecutorial misconduct in using a witness, who invokes the privilege, to bolster the government's case by negative inferences against the defendant. See, e.g., Perez v. Jones, 935 F.2d 480, 483 (2d Cir 1991); United States v. Vandetti, 623 F.2d 1144, 1148 (6th Cir. 1980); Person v. Meachum, 772 F. Supp. 69, 73 (D. Conn. 1991). Other courts focus on the Confrontation Clause. See, e.g., Harmon v. McVicar, 95 F.3d 620 624 (7th Cir. 1996); United States v. Espinosa, 771 F. 2d 1382, 1398-99 (10th Cir. 1985); see also Namet v. United States, 373 U.S. 179, 185-86 (1963) (discussing two theories).

20

## Conclusion

For the foregoing reasons, the plaintiff's motion for summary judgment (document no. 35) is denied. The petition for a writ of habeas corpus is denied for the reasons stated in this order. The respondent's motion for summary judgment (document no. 28) is terminated without ruling.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

March 25, 2004

cc:  Nicholas P. Cort, Esquire
     Steven J. Roy, pro se
     Peter Heed, Attorney General

21